Sonja **STUMO**, Plaintiff-Appellant,

v.

**UNITED AIR LINES, INC.** et al., Defendants-Appellees.

No. 15904.

United States Court of Appeals
Seventh Circuit.

Aug. 10, 1967.

George F. Archer, Chicago, Ill., for appellant.

Allen E. Gramza, Stuart Bernstein and Arthur J. Kowitt, Chicago, Ill., Mayer, Friedlich, Spiess, Tierney, Brown & Platt, Chicago, Ill., of counsel, for appellees.

Before HASTINGS, Chief Judge, MAJOR, Senior Circuit Judge, and SCHNACKENBERG, Circuit Judge.

MAJOR, Senior Circuit Judge.

Plaintiff, an employee of United Air Lines, Inc. (United), brought this action against it and other defendants for the recovery of compensatory and punitive damages and other relief, for her alleged wrongful discharge on March 14, 1966. United is a common carrier by air, and it and its employees are subject to Title II of the Railway Labor Act, Title 45 U.S.C.A. Sec. 181 et seq. Defendant Air Line Pilots Association (ALPA) is a union representing the employees of United, including plaintiff, in an appropriate unit. United and ALPA operate under a collective bargaining agreement which sets forth the rights and responsibilities of the parties thereto. Defendants Ritner, Hardesty, McAnallen and Robertson were members of United's System Board of Adjustment, the two former being designees of United and the two latter of ALPA. Defendant Ruby was president of ALPA.

Defendants United, Ritner and Hardesty, pursuant to Rule 12(b) (1) and (6) of the Federal Rules of Civil Procedure, moved to dismiss the complaint for the following reasons:

"1. The Court lacks jurisdiction over the subject matter of this suit since plaintiff's exclusive remedy is before the United Air Lines. Stew-

ardesses and Flight Stewards System Board of Adjustment;

"2. This action is premature since the System Board of Adjustment has not yet heard and decided plaintiff's grievance, and any constitutional impairment alleged in the Railway Labor Act may be asserted by plaintiff in a suit to review any award of the System Board of Adjustment which plaintiff may deem to be in violation of her constitutional rights;

"3. The complaint fails to state a claim upon which relief can be granted."

A similar motion was filed by ALPA, Mc-Anallen and Robertson. The Court permitted the filing of numerous affidavits and other documentary evidence submitted by the parties in support of their respective positions.

The Court by its order of October 4, 1966, allowed defendants' motion to dismiss for lack of jurisdiction on the ground that "plaintiff having elected the grievance procedure and alleging no fraud or misrepresentation on part of either or both defendants is bound by such election." From this order plaintiff appeals.

In this Court defendants argue as an alternative basis for affirming the order of dismissal that the Court was without jurisdiction for want of diversity of citizenship.

Of the numerous issues argued by the respective parties, we think there clearly emerges the controlling issue as to whether the System Board acquired exclusive jurisdiction of plaintiff's grievance, which she submitted to it in accordance with the terms of the collective bargaining agreement.

As alleged in plaintiff's complaint:

"At all times relevant hereto an agreement existed between the defendant Air Line Pilots Association Air Line Stewardesses and Flight Stewards Division, a labor union duly certified and recognized, which covered the pay, rules and working conditions of stewardesses employed by United including Plaintiff; said contract contained a Section XII, 'Investigation and Discipline', and a Section XIII, 'System Board of Adjustment', set up in compliance with Sec. 204, Title II of the Railway Labor Act and whose jurisdiction was governed by the authority of Sec. 3, Title I of the Act."

A letter of discharge, dated March 14, 1966, was sent to plaintiff by Mary Decker, her supervisor, in conformity with Sec. XII–A–1 of the collective bargaining agreement between ALPA and United. Sections XII and XIII of the agreement contain procedures for the processing of discharge grievances. They provide for a series of appeals through various levels of supervision up to the vice president and general manager of the Customer Services and ultimately to the System Board of Adjustment. The Board's decisions, in all cases "properly referrable to it" are expressly made "final and binding upon the parties thereto."

The System Board has jurisdiction, *inter alia,* over all "disputes between [an] employee * * * and the company * * * growing out of grievances or out of the interpretation or application of any of the terms of this agreement." The Board consists of four members, two selected by the company and two by ALPA, with provision for appointment of a neutral referee in the event of a deadlock. Unless a timely appeal is taken to the System Board from the company's fourth level decision, that decision becomes "final and binding" under the contract.

Upon her discharge, plaintiff set in motion the contract grievance machinery. We need not recite in detail the evidentiary circumstances concerning the numerous hearings which were held at plaintiff's request. This is so for the reason, as we understand, that there is no claim by plaintiff that the contract procedure was not followed at least until June 15, 1966, when her grievance was

submitted to the System Board. On brief plaintiff states:

"As required by the Railway Labor Act (45 U.S.C. 184), Plaintiff grieved this dispute and it was handled in the usual manner up to and including the chief operating officer of the carrier so designated (a Mr. E. C. Westervelt) but Stumo was not reinstated."

More than that, plaintiff argues that the Act "does not give the employee an election but compels processing the grievance in the usual manner to the chief operator of the carrier" as a prerequisite to the right of the employee to elect to sue in a court for wrongful discharge.

It may be of some relevancy to point out that at the first hearing, held on March 29, 1966, plaintiff appeared with a fellow stewardess, and Mary Decker was present for the company. Plaintiff's grievance was denied and a copy of the decision was sent to her and to ALPA's legal department, at her request. Hearing on a further appeal was held April 28, 1966, to which plaintiff was accompanied by the chairman of the ALPA local and by a fellow employee. Following this hearing, copies of the decision were sent to plaintiff and to the ALPA legal department.

At this stage of the proceeding United received a letter from Mr. George F. Archer, dated April 29, 1966, in which he stated, "Please be advised that Miss Sonja Stumo is a client of mine and has requested that I examine the pertinent decisions that have been rendered in the above case." He requested a copy of the decision following the hearing of April 28, 1966, with which he was supplied. The record reveals an exchange of a series of letters between Archer and United, which in the main we regard as immaterial. It may be pertinent to note, however, that in a letter dated May 25, 1966, Archer demanded that United "reinstate Miss Stumo with full back pay, seniority and a letter of apology * * *." In a letter dated June 3, 1966, United advised Archer that under the terms of the collective bargaining agreement and the Railway Labor Act, an appeal would lie to the System Board of Adjustment.

In the meantime, plaintiff by letter dated May 5, 1966, requested an appeal hearing from the adverse decision following the hearing of April 28. In response to this request she was advised by United, in a letter dated May 10, of a hearing date of May 18, 1966. Copies of this letter were sent to ALPA's local chairman, to its legal department and to Mr. Archer. Two of plaintiff's fellow stewardesses accompanied her to this hearing. For some reason not explained by the record, Archer was not present and his name was not mentioned by plaintiff. On May 25, 1966, plaintiff was advised that her appeal was denied, and copies of the decision were sent to ALPA's legal department and to Miss Holle, one of the stewardesses who had appeared with plaintiff at the hearing.

On June 15, 1966, ALPA submitted plaintiff's grievance to the System Board, protesting her discharge. This submission, in our opinion, is of great importance, perhaps decisive of the issue before us. The letter was directed to David S. Ritner (a defendant), Chairman, United Air Lines, Inc. Stewardesses', System Board of Adjustment, and was signed by Charles H. Ruby (a defendant), as President of Air Line Pilots Association (Steward and Stewardess Division). The letter set forth the provisions of the collective bargaining agreement which required the Board to consider any dispute properly submitted to it by an employee which had not been previously settled in accordance with the terms of the agreement. The letter stated the questions at issue, the facts upon which plaintiff relied and her position with reference thereto, as well as the position of the employer. It concluded:

"Wherefore, the grieving stewardess herewith requests the decision of the Board:

"1. That the Company was not justified in the discharge of the grievant.

"2. That the grievant be fully reinstated, that she be made whole any monetary losses sustained and that all papers pertaining hereto be removed from her file, and

"3. That the grievant have such other, further or different relief as this Board may deem just and proper."

John G. Loomos, regular staff attorney for ALPA, in an affidavit stated, among other things:

"3. That he furnished both subject and her attorney with advice before each of the hearings provided for in the Collective Bargaining Agreement. Similar assistance was rendered her by local Air Line Pilots Association officials.

"4. Per her request, a letter submitting her grievance to the United Air Lines, Inc. Steward & Stewardess System Board of Adjustment was prepared by me for signature by Association President, Charles H. Ruby."

Thus, it is not open to doubt but that plaintiff's grievance was properly submitted by ALPA to the System Board, at her request, and that the letter of submission was prepared by ALPA's legal counsel. Although Archer does not expressly affirm or deny that he had knowledge of the submission, it is plainly inferable that he did. Moreover, a reading of the correspondence between Archer and United leaves us with the distinct impression that he was not interested in aiding his client in processing her grievance before the System Board but was concerned only with preparing the way for court action.

On July 6, 1966, plaintiff by her attorney, Archer, filed the instant complaint in the United States District Court. Thus, we have a situation where plaintiff by ALPA, her duly authorized agent, properly submitted her grievance to the System Board, and some three weeks later, without notice and without affording the Board an opportunity to hear and decide her grievance, abandoned the same and elected to resort to the Court for relief. She not only abandoned her submission to the System Board but sought to enjoin it from hearing and deciding the matter.

This brings us to a consideration of the cases relied upon by the parties in support of their respective positions. Moore v. Illinois Central Railroad Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089, is much relied upon by plaintiff. It is the progenitor of a long line of cases and has been often cited and discussed by the Supreme Court. An attempt to analyze these many cases in detail would unduly burden this opinion. Furthermore, in the view which we take of the matter, it is not necessary.

True, in *Moore,* the Court held that a discharged railroad employee, who claimed to have been wrongfully discharged in violation of his union contract, could pursue his remedy under state law for breach of contract without having to exhaust either his contract remedies or his administrative remedy before the National Railroad Adjustment Board. In the instant case we need not be concerned with state law as it is not relied upon by plaintiff. Subsequent decisions of the Supreme Court have severely limited the *Moore* doctrine to the particular facts of that case, which were quite dissimilar from those before us.

In Slocum v. Delaware, Lackawanna & Western Railroad Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795, the Court held that the jurisdiction of the Adjustment Board to adjust grievances and disputes of the type there involved was exclusive. As to *Moore* the Court stated (page 244, 70 S.Ct. page 580):

" * * * Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. * * *

"We hold that the jurisdiction of the Board to adjust grievances and dis-

putes of the type here involved is exclusive. The holding of the *Moore* case does not conflict with this decision, and no contrary inference should be drawn from any language in the *Moore* opinion."

As we have shown, in the instant case plaintiff did not recognize her discharge as final but challenged its validity before the Board by seeking reinstatement.

In Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325, one of the questions was whether an employee of a carrier subject to the Railway Labor Act must show that he has exhausted his administrative remedies under the contract of employment. The Court answered the question in the affirmative, "provided the applicable state law so requires." The Court (page 660, 73 S.Ct. 906) repeated the interpretation of *Moore* which it made in *Slocum* (above quoted), and concluded (page 661, 73 S.Ct. page 910):

> "Where the applicable law permits his recovery of damages without showing his prior exhaustion of his administrative remedies, he may so recover, as he did in the *Moore* litigation, supra, under Mississippi law."

Walker v. Southern Railway Co., 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294, much relied upon by plaintiff, held that a railroad employee who had received a final discharge was not barred from maintaining a court suit for damages because of failure to pursue administrative remedies. The Court interpreted *Moore* as deciding (page 196, 87 S.Ct. page 365):

> " * * * a discharged railroad employee aggrieved by the discharge may either (1) pursue his remedy under the administrative procedures established by an applicable collective bargaining agreement subject to the Railway Labor Act, and his right of review before the National Railroad Adjustment Board, or (2) if he accepts his discharge as final, bring an action at law in an appropriate state court for money damages if the state courts recognize such a claim."

We do not interpret *Walker* to hold that a discharged employee can maintain a court action for damages for wrongful discharge and at the same time seek to maintain his status as an employee. Certainly *Walker*, and no other case so far as we are aware, stands for the proposition that an aggrieved employee may pursue his administrative remedies up to and *including* submission of his grievance to the System Board, abandon it, and resort to court action. Moreover, the Court in *Walker*, after discussing (page 198, 87 S.Ct. page 366) a number of defects which produced delays in the processing of claims, concluded its opinion as follows:

> "In consequence, Congress enacted Public Law 89–456, 80 Stat. 208–210, effective June 20, 1966, which drastically revises the procedures in order to remedy the defects. Of course, the new procedures were not available to petitioner * * *."

It thus appears that the Court would have reached a different result if, as in the instant case, the enactment mentioned had been available to the plaintiff.

Two cases, Pennsylvania Railroad Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422, and Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 3 L.Ed.2d 1460, both decided June 29, 1959, involved facts quite similar to those here.

In *Day*, the Court stated (360 U.S. page 552, 79 S.Ct. page 1325):

> "Moreover, the discharged employee may challenge the validity of his discharge before the Board, seeking reinstatement and back pay. See Union Pacific R. Co. v. Price, post, 360 U.S. p. 601, 79 S.Ct. 1351. Thus it is plain both from a reading of the Act in light of its purpose and the needs of its administration and from the settled administrative interpretation that the Board has jurisdiction over respondent's claim for compensation.

> "Since the Board has jurisdiction, it must have exclusive primary jurisdiction."

The Court distinguished *Moore* thus (page 553, 79 S.Ct. page 1325):

"*Moore* carved out from the controlling doctrine of primary jurisdiction the unusual and special situation of wrongful discharge where the aggrieved employee has been expelled from the employment relationship."

In *Price*, the employee's union, after processing his grievance through the required management levels with unsatisfactory results, submitted his case to the National Railroad Adjustment Board, which denied the claim. Thereafter, Price filed his court action, alleging wrongful dismissal in violation of the collective bargaining agreement for the same reasons urged before the Adjustment Board. The Court distinguished *Moore* thus (360 U.S. page 609, 79 S.Ct. page 1356, footnote):

"However, the holding in *Moore* was simply that a common-law remedy for damages might be pursued by a discharged employee who did not resort to the statutory remedy before the Board to challenge the validity of his dismissal. A different question arises here where the employee obtained a determination from the Board, and, having lost, is seeking to relitigate in the courts the same issue as to the validity of his discharge."

It held (page 617, 79 S.Ct. page 1360):

"We therefore hold that the respondent's submission to the Board of his grievances as to the validity of his discharge precludes him from seeking damages in the instant common-law action."

Thus, in *Price*, the employee resorted to his administrative remedy, challenged his discharge by submitting his grievance to the Adjustment Board and, after receiving an adverse decision, filed his court action. In the case here, the employee resorted to her administrative remedy, challenged her discharge by submitting her grievance to the System Board and, without giving it an opportunity to hear and decide, abandoned the same and filed her court action. The

reasoning by which the Court reached its result in *Price* is controlling here. A contrary holding would make a shambles of the statutory and contractual provisions for the settlement of grievances.

Perhaps we should not conclude our reference to the cases without mention of Vaca et al. v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842, decided February 27, 1967. In that case an employee was permitted to maintain an action in a state court against a union for its refusal to take his grievance to arbitration. Plaintiff obtained a judgment against the union, which was affirmed by the Missouri Supreme Court but reversed by the United States Supreme Court on the ground that plaintiff had failed to prove that the refusal of the union was arbitrary or the result of bad faith. Of course, the facts there are a far cry from those here, where the union by its representatives processed plaintiff's grievance in the usual and ordinary manner and, at her request, properly prepared and submitted it to the System Board.

In discussing the employee's duty to exhaust administrative remedies, the Court in *Vaca* stated (page 184, 87 S.Ct. page 914):

"Since the employee's claim is based upon breach of the collective bargaining agreement, he is bound by terms of that agreement which govern the manner in which contractual rights may be enforced. For this reason, it is settled that the employee must *at least attempt* to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement." (Italics supplied.)

Plaintiff argues that she did "at least attempt" to exhaust the grievance procedures provided by the agreement. The fallacy of this argument resides in the fact that while plaintiff pursued her contractual remedies up to and including the submission of her grievance to the System Board, she abandoned the same and resorted to court action. Thus, by her voluntary act she thwarted the jurisdic-

tion of the System Board, which she had invoked, and rendered nugatory the attempt which she had initiated. *Vaca* is of no aid to plaintiff.

■ Plaintiff advances numerous subsidiary contentions which do not require extended consideration. She asserts that to deprive her of a jury trial for her alleged wrongful discharge is a violation of the Seventh Amendment to the Constitution. This argument is wholly without merit. See Union Pacific Railroad Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 13 L.Ed.2d 1460; Pennsylvania Railroad Co. v. Day, 360 U.S. 548, 79 S.Ct. 1322, 3 L.Ed.2d 1422, and Parker v. Illinois Cent. Ry. Co. et al., D.C., 108 F.Supp. 186, 188. Plaintiff fails to recognize that Congress has the power to modify or abolish common law rights or remedies. See Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221, and Mountain Timber Co. v. State of Washington, 243 U.S. 219, 37 S.Ct. 260, 61 L.Ed. 685.

■ Plaintiff argues, apparently as an excuse for abandoning her voluntary submission, that she cannot receive a fair trial before the System Board. The thrust of her argument on this point is based upon the make-up of the Board, that is, that it is composed of members selected by the employer and the union. A similar contention made to this Court in Arnold et al. v. United Air Lines, Inc. et al., 296 F.2d 191, was answered, correctly we think, adversely to the employee.

■ An examination of plaintiff's complaint reveals that a number of her allegations are of a conclusory nature; some are positively refuted by the documentary proof submitted in connection therewith and others are irrelevant to any issue in the case. She alleges in effect that because she was a non-union member, ALPA refused proper legal assistance, thereby discriminating against her. We have previously shown how her grievance was processed, which plaintiff admits was "in the usual and ordinary manner," and how it was prepared by the legal department of ALPA and submitted to the System Board. The record completely dispels the allegation that she was treated unfairly or discriminated against by ALPA. More than that, by the time her grievance was submitted to the System Board she had employed a private attorney.

Plaintiff on brief states, "* * * this record is replete with plaintiff's vain attempts to lay the foundations for a fair trial." This statement would be more accurate if it read, "This record is replete with plaintiff's vain attempts to lay the foundations which would justify her abandonment of the proceedings which she initiated before the System Board, so as to resort to court action."

■ Of the numerous letters exchanged between United and Archer, plaintiff calls particular attention to those of June 21 and June 28, directed by Archer to United, which United did not answer. These letters, so it is asserted, were attempts to obtain vital information conducive to a fair trial before the System Board. In the June 21 letter Archer suggested that a neutral referee be designated to sit with the System Board, and submitted for that purpose the names of six persons. The suggestion was premature inasmuch as the agreement expressly provided that a neutral referee should be employed only in the event of a Board deadlock, which obviously could not take place until after the grievance was heard. Courtesy might have suggested a reply, but United was under no legal obligation to do so. In the June 28 letter Archer requested a copy of plaintiff's submission to the System Board which, as we have previously shown, had already been furnished him by the legal counsel for ALPA. Concern was expressed in the letter that the writer was not being kept informed of the steps being taken regarding plaintiff's grievance. The letter was self-serving, and United's failure to answer it within one week is no proof of the charge of unfairness. It evidently was the last step taken in preparation for court action, which was commenced one week later.

One other allegation of the complaint perhaps should be noted. It is alleged that United wilfully told plaintiff "that her conduct was akin to embezzling of company funds." We assume it is this allegation upon which plaintiff seeks exemplary damages. It is not alleged that the statement was false or that it was made by any person for whose utterances United would be liable. Moreover and of more importance, it was irrelevant to any issue which plaintiff submitted to the System Board.

█ We hold that the complaint was properly dismissed on the ground that the System Board acquired exclusive jurisdiction to hear and decide plaintiff's grievance, which she submitted to it in accordance with the terms of the collective bargaining agreement. This makes it unnecessary to consider or decide the alternative basis suggested by defendants as a reason for affirmance, that is, a lack of diversity of citizenship.

The order appealed from is

Affirmed.

SCHNACKENBERG, Circuit Judge (dissenting):

Sonja Stumo, plaintiff, appeals from an order of the district court entered September 27, 1966, granting motions to dismiss her complaint, filed by defendants United Air Lines, Inc., a Delaware corporation, "United", E. S. Ritner, R. W. Hardesty, Carole McAnallen and Diane Robertson (as members of the United Air Lines System Board of Adjustment), Air Line Pilots Association-Stewardess and Flight Stewards Division,[1] and Charles H. Ruby, as its president and individually.

Plaintiff's complaint, in count I,[2] alleged a cause of action against United for wrongful discharge, arising under the fifth and seventh amendments of the United States constitution and also the Railway Labor Act, 45 U.S.C. §§ 181, 184, and 153 First (m) and (p), as conferred by 28 U.S.C. § 1337; and § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, as amended.

From the complaint it appears that plaintiff was hired by United as a stewardess effective July 7, 1958, and was so employed until her discharge on March 14, 1966. Her supervisor, Mary Decker, then notified her by letter that she was discharged for violations of United's travel policy on December 20 and 25, 1965. Pursuant to the labor contract in effect, she requested a hearing and an investigation, and hearings were held at United's offices.

Count I charges that United willfully disregarded plaintiff's rights in conducting hearings in reference to her and, in other respects, was guilty of improper handling of her rights, and that, as a direct result thereof, she was willfully and wrongfully discharged, for which she seeks both compensatory and exemplary damages.

In count II, plaintiff charges that United's System Board of Adjustment—Stewardess Division received a Letter of Submission from the Union which conferred jurisdiction on the Board to hear plaintiff's grievance of wrongful discharge, but the Union refused to offer legal aid to her, a nonunion employee, although all [Union] members are assigned a staff lawyer to represent them at such Board hearings. She also charges that defendant, Board members Ritner, Hardesty, McAnallen and Robertson, are employees of United, who are junior in rank to United's officers, who had already denied plaintiff's grievance, and that she "cannot get a fair hearing at the said System Board."

Plaintiff's suit, prays, *inter alia*, that defendants be enjoined from "prosecuting, hearing and/or deciding" her discharge grievance against United.

---

1. Sometimes referred to herein as the "Union" or "ALPA".

2. While count II asked for certain injunctive relief and for a declaration that parts of the Railway Labor Act are unconstitutional, for that purpose it is now not relied upon by plaintiff, and I would consider it abandoned as a basis for such relief.

The following relevant facts occurring before this suit was instituted appear in an affidavit filed in support of United's motion to dismiss:

In the letter from Mary Decker discharging plaintiff, she was told she was expected to reimburse United for $29.09.

Plaintiff appealed from her discharge to Stewardess Service Manager Hale by letter dated March 17, 1966 and requested "an investigation hearing" of the discharge, and decisions rendered. Hale replied on March 23, 1966 by letter, stating the charges.

In Hale's office a hearing was held March 31, 1966. By letter dated April 8, 1966, he informed plaintiff that the charges were accurate and that she had a responsibility to acquaint herself with the proper procedures.

On April 15, 1966, plaintiff appealed from this decision to vice-president Dorsey, relying on the agreement between United and ALPA. W. L. Richman, staff representative, Employee Relations, and designee of Dorsey to hear plaintiff's grievance, set April 28, 1966 for a hearing. There is nothing in the record from which the court can determine what statements, sworn or unsworn, were made at the hearing on April 28, 1966. The record merely shows that there were present besides plaintiff and Richman, the following: Miss Decker, Passenger-agent Voss, Stewardess Kaye and Marilyn Holle (ALPA chairman of O'Hare Local).

At this point, attorney George F. Archer under date of April 29, 1966, wrote United vice-president Dorsey, stating that plaintiff had become his client and requested all pertinent information to be released in the future, as well as a copy of any decision based on the April 28th hearing.

By letter dated May 3, 1966, Richman notified plaintiff that her grievance was denied for the reason that she had failed to satisfactorily explain various questions which she had been asked.

Dorsey replied to Archer on May 4, 1966, enclosing copies of the letter of charges dated March 23, 1966, the Hale decision of April 8, 1966, and the Richman May 3, 1966 decision. Dorsey requested that thereafter all correspondence be addressed to F. A. Brown, vice-president and general manager of United. Thereupon plaintiff on May 5, 1966 wrote Mr. Brown requesting "an appeal hearing, as provided in the Agreement" and asking that copies of hearing notices and decisions rendered be sent to her and attorney Archer. Whereupon vice-president and general manager of customer service, E. C. Westervelt (who had been appointed designee for Mr. Brown) replied by letter dated May 10, 1966 setting a hearing for May 18, 1966 in the stewardess office at O'Hare, a copy of which letter was sent to attorney Archer.

Under date of May 25, 1966, Westervelt wrote plaintiff a letter in which he referred to the May 18, 1966 hearing, at which plaintiff, as well as Miss Holle and stewardess Prato, Miss Decker and Mr. Hale were present. Westervelt concluded that plaintiff's discharge was proper and therefore her grievance was denied.

On the same date, May 25, Archer wrote Brown, in part:

"* * * the appeal 'opinions' have not been predicated upon the facts presented at the hearings; they have been prejudged, and the burden of proof has been shifted. * * * We further state that an arbitrary standard was imposed on Miss Stumo that has not been applied to United's unionized employees."

However, Brown replied on June 3, 1966, indicating that plaintiff was "required to make any further appeal to the System Board of Adjustment".

Following Brown's suggestion, Archer on June 8, 1966 inquired of him the date of the next Board meeting, the names of its members and other information. Due to Brown's

absence, O. E. Wilkinson on June 13, 1966 furnished the names of the four board members and gave the name of Ritner as board chairman to whom plaintiff should submit her appeal. The Union by letter of June 15, 1966 submitted plaintiff's grievance to the System Board.

On July 6, 1966, plaintiff filed her suit in the district court.

1. It is the basic contention of plaintiff that she was wrongfully discharged and that this is a common-law action arising therefrom. Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941). She maintains that she could not obtain an impartial hearing before the Board, because of its makeup.[3]

This court now relies on Union Pacific R. Co. v. Price, 360 U.S. 601, 79 S.Ct. 1351, 13 L.Ed.2d 1460 (1959). But there petitioner Price knew that his union, with his consent, submitted to the National Railroad Adjustment Board his grievance against a railroad employer, *which was dismissed by the Board,* and therefore he was precluded from seeking damages for that dismissal in a common-law action. As the court pointed out at 602, 79 S.Ct. at 1352:

"This is a diversity common-law action brought by the respondent, a former employee of petitioner railroad, in the United States District Court * * * to recover damages from the railroad for allegedly wrongfully discharging him in violation of the collective bargaining agreement between it and the Brotherhood of Railroad Trainmen. * * * "

The court thereupon added:

" * * * The validity of the discharge was previously challenged upon the same grounds before the National Railroad Adjustment Board, First Division, in a proceeding brought by the Brotherhood on respondent's behalf under § 3 First (i) of the Railway Labor Act, seeking the respondent's reinstatement with back pay. The Board rendered an award in favor of the petitioner. The question for decision here is whether the respondent may pursue a common-law remedy for damages for his allegedly wrongful dismissal after having chosen to pursue the statutory remedy which *resulted in a determination by the National Adjustment Board that his dismissal was justified.*" (Italics supplied.)

At 605, 79 S.Ct. 1351, the court pointed out that by its award and adjustment board denied the claim, and some three years later the damage suit was filed in court.

At 607, 79 S.Ct. at 1355, the court stated:

" * * * Even if the procedure followed by the railroad constituted a proper investigation, the Board's outright denial of the claim is explicable only on the ground that the Board also held that Article 32(b) did not justify the respondent in disobeying the dispatcher's instruction to remain at Nipton. We conclude that both issues were decided by the Board against the respondent, and therefore reach the question whether the respondent, despite the adverse determination of the Adjustment Board, could pursue the common-law remedy for damages in the District Court."

and at 608–609, 79 S.Ct. at 1355, the court added:

" * * * Congress barred the employee's subsequent resort to the common-law remedy after an adverse determination of his grievance by the Adjustment Board."

3. Plaintiff had been confronted with the reality of the situation including the presence on the Board of two employees of United who were junior in standing to the company officials against whom plaintiff's grievances were directed. In addition there were two stewardesses on the Board, also employees of United, who were members of the union. As pointed out, plaintiff was not a member of the union. Cf. Arnold v. United Air Lines, Inc., 7 Cir., 296 F.2d 191, 195 (1961).

Obviously in the case at bar, while plaintiff in good faith attempted to exhaust the available grievance procedures, it is a fact that the Board never made a final decision or award. It therefore follows, that (unlike *Price*), there having been no determination of her grievance by the Board, plaintiff was not thereby barred from proceeding with her common-law action.

Although plaintiff was discharged by United and she claims that the discharge was wrongful, defense counsel has not cited any case overruling the principles announced in *Moore*. Moreover, in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, at 244, 70 S.Ct. 577, at 580, 94 L.Ed. 795 (1950), *Moore* was cited as authoritative, the court saying:

"Our holding here is not inconsistent with our holding in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. Moore was discharged by the railroad. He could have challenged the validity of his discharge before the Board, seeking reinstatement and back pay. Instead he chose to accept the railroad's action in discharging him as final, thereby ceasing to be an employee, and brought suit claiming damages for breach of contract. As we there held, the Railway Labor Act does not bar courts from adjudicating such cases. A common-law or statutory action for wrongful discharge differs from any remedy which the Board has power to provide, and does not involve questions of future relations between the railroad and its other employees. * * *"

In addition, we have the benefit of the recent decision in Vaca v. Sipes, 386 U.S. 171, at 179, 87 S.Ct. 903, at 911, 17 L. Ed.2d 842 (1967),[4] where the court recognized the general rule that neither state nor federal courts have jurisdiction over suits directly involving activity subject to the National Labor Relations Act, citing San Diego Building Trades Council, etc. v. Garmon, 359 U.S. 236, at 245, 79 S.Ct. 773, 3 L.Ed.2d 775. However, the court in *Vaca* proceeded to say:

"This pre-emption doctrine, however, has never been rigidly applied to cases where it could not fairly be inferred that Congress intended exclusive jurisdiction to lie with the NLRB, * * * *"

Further, 386 U.S. at pages 184–185, 87 S.Ct. at page 914, the court stated:

" * * * For this reason, it is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement. Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580. However, because these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures."

At 187, 87 S.Ct. at 915, the court went on to say:

" * * * If a breach of duty by the union and a breach of contract by the employer are proven the court must fashion an appropriate remedy. * * * *"

Moreover, under all the circumstances of this case, it would be unrealistic to contend that plaintiff's bona fide endeavor to obtain relief by the administrative process in and of itself barred her from filing her action for damages against United, on the theory that she had thereby elected to proceed solely with the administrative proceedings. While counsel for United argue that "if plaintiff were to abandon the grievance route in midstream, her right to recover under the contract for wrongful discharge would

---

4. *Vaca* relies upon the doctrine developed in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), which, in turn, *involved the Railway Labor Act.*

terminate according to its own terms", they choose to ignore the frustration which overwhelmed her efforts to exhaust her administrative remedies.

2. Defendants contend that plaintiff cannot maintain her action for wrongful discharge in the federal courts because she has failed to satisfy the basic requirements of the *Moore* case. They note that *Moore* was based upon diversity of citizenship and that, in the case at bar, in her complaint plaintiff does not allege diversity. Thus defendants rely on Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L.Ed. 1325 (1953) which was an action brought by a discharged employee for damages for wrongful discharge, and was based on diversity of citizenship. There plaintiff relied upon the law of Missouri.

It appears, however, that from its very nature the controversy involved in this case is one which arose under the laws of the United States, 28 U.S.C.A. § 1331 and § 1337.[5] International Ass'n of Machinists v. Central Airlines, 372 U.S. 682, 684, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963). The case before us is *not* a diversity action.

In Republic Steel Corp. v. Maddox, 379 U.S. 650, at 657, 85 S.Ct. 614, at 618, 13 L.Ed.2d 580 (1965), the court said:

"* * * *Federal law* governs 'Suits for violation of contracts between an employer and a labor organization * * *'. * * * *" (Emphasis supplied.)

but recognized that *Moore* is not overruled. On the other hand, the court concluded that "the general <u>federal rule</u>" (underscoring mine) applies.

I agree with the logic of plaintiff's counsel herein when he suggests that the rights of a litigant such as plaintiff visa-vis an interstate air carrier do not depend on the varying laws of the many states it crosses. I would hold that diversity of citizenship is not essential to plaintiff's cause of action when asserted under federal law.

This principle of federal law was recognized by United itself when it recently filed suit in the District Court for the Northern District of Illinois, Eastern Division (62 C 2116), seeking to enjoin its pilots from ignoring certain training procedures for jet aircraft. Diversity of citizenship not being present, United based federal jurisdiction upon §§ 1331 and 1337, supra.

3. In its brief United declares that plaintiff cannot rely upon *Machinists* to sustain federal jurisdiction and at the same time "avoid the federal policy of exhaustion which governs federally enforcible contracts". But she does not seek to avoid that policy. Rather, in accordance with federal law, she made a bona fide attempt to comply with and exhaust her administrative remedies. When, because of the circumstances which confronted her, the Board's action promised to be abortive, plaintiff was justified in filing the present suit for unlawful discharge.[6] At the trial of her damage suit, the bona fides of her efforts to exhaust her administrative remedies will be an issue. The requirements of federal, not state, law will control. The guidelines in that respect were laid down in Republic Steel Corp. v. Maddox, supra, 652, 85 S.Ct. 616:

"As a general rule in cases to which federal law applies, federal labor

---

5. § 1331(a) provides:
   The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy * * * arises under the Constitution, laws * * * of the United States.
   § 1337 provides said courts
   * * * shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and

commerce against restraints and monopolies.

6. Scholarly treatises supporting this conclusion appear in Exhaustion of Remedies and Wrongful Discharge Under the Railway Labor Act, 25 U.Chi.L.Rev. 686, 688 (1958); Jaffe, The Exhaustion of Administrative Remedies, 12 Buffalo L. Rev. 327, 329 (1963).

policy requires that individaul employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. * * * "

I would hold that the record before us indicates that there is a sufficient showing that plaintiff at the trial of her damage suit could present evidence, under her complaint, from which the court could find that she had met the requirements of the policy stated in *Maddox*.

For these reasons, I would reverse the order from which this appeal was taken and would remand to the district court for further proceedings in accordance herewith.