Lucien **LOUIS**, Jean Louis, Servebien, Pierre Silien, Serge Verdieu, Milfort Vilgard and Joel Casimir, on behalf of themselves and all others similarly situated; and the Haitian Refugee Center, Inc., a non-profit membership corporation, on behalf of itself and its members, Plaintiffs,

v.

Doris **MEISSNER**, Acting Commissioner, Immigration and Naturalization Service; Joe Howerton, District Director, Immigration and Naturalization Service, District VI; Lee Rowland, Assistant District Director for Deportation, Immigration and Naturalization Service, District VI; Fred Alexander, Officer in Charge, Krome Avenue North Detention Facility; the Immigration and Naturalization Service; William French Smith, Attorney General of the United States, Defendants.

No. 81–1260–CIV–EPS.

United States District Court,
S. D. Florida,
Miami Division.

Feb. 24, 1982.

Ira J. Kurzban, Vera Weisz, Miami, Fla., Bruce J. Winick, Irwin P. Stotzky, Coral Gables, Fla., Michael Rosen, Miami, Fla., for plaintiffs.

Thomas Moseley, Miami, Fla., Robert L. Bombaugh, Washington, D. C., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS IN PART

SPELLMAN, District Judge.

THIS CAUSE came before the Court on Defendants' Motion to Dismiss. Having re-

viewed the record in this cause and being otherwise duly advised, it is hereby

ORDERED AND ADJUDGED that Defendants' Motion to Dismiss is GRANTED in part as follows:

## PROCEDURAL BACKGROUND

Originally this case was instituted on June 10, 1981 as a Petition for a Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241.[1] The Petitioners named therein were "Marie Lucie Jean and Harold Jacques, on behalf of themselves and other Haitian aliens similarly situated, and the Haitian Refugee Center, Inc." The Petition was filed in order to "stay final orders of exclusion and deportation against certain Haitian refugees issued by the Immigration and Naturalization Service" (hereinafter INS). These "final orders" were allegedly obtained in violation of Petitioners' rights to "a fair exclusionary hearing and to fair proceedings, and to consult with counsel."

On June 16, 1981 an amended petition for a writ of habeas corpus and a complaint for declaratory, injunctive and mandatory class action relief were filed.[2] Seven causes of action were asserted therein: (1) that the Defendant officials of INS District VI and their employees conducted preliminary interviews with Petitioners and Plaintiffs in which the refugees were compelled to appear in person before INS representatives without being permitted to be accompanied, represented, and advised by counsel, and without being advised of their right to do so, in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b); (2) that on or about May 20, 1981, Defendants changed their prior policy with respect to the parole and detention of Haitian refugees arriving after that date, the order in which such refugees would be subjected to exclusion proceedings, and the manner in which such proceedings would be conducted, a change in policy which is unlawful since not accomplished in accordance with the rulemaking requirements of the APA, 5 U.S.C. § 553; (3) that Defendants failed to provide Petitioners with adequate notice of their right to counsel at exclusion hearings and of their right to a hearing on which they would have a reasonable opportunity to present evidence, to examine and object to evidence, and to cross-examine witnesses against them, failed to give Petitioners written notice of the purposes for their detention and hearing, and on information and belief, threaten not to provide such notice to plaintiffs when and as they are subjected to exclusion proceedings, all in violation of INS Operations Instructions, 8 C.F.R. § 235.6(a) (1981), Section 292 of the Immigration and Nationality Act, 8 U.S.C. § 1362, the Due Process Clause of the Fifth Amendment, and the United Nations Convention and Protocol Relating to the Status of Refugees ("Protocol"); (4) that Defendants denied Petitioners, and on information and belief threaten to deny Plaintiffs, access to counsel in connection with their exclusion proceedings, in violation of INS Operations Instructions and Regulations, 8 C.F.R. § 236.2(b) (1981), Section 292, of the Immigration and Nationality Act, 8 U.S.C. § 1362, the Due Process Clause of the Fifth Amendment, the First Amendment, and the Protocol, and in violation of Plaintiff HAITIAN REFUGEE CENTER, INC.'s rights under the First Amendment; (5) that Defendants denied Petitioners, and on information and belief threaten to deny Plaintiffs, their right to a public exclusion hearing, in violation of INS Operations Instruc-

---

1. This cause was originally assigned to Judge Hastings and was not transferred to this Division until December 3, 1981.

   A review of the original Petition reveals that it was defective on its face and should have been dismissed for failure to comply with the provisions of 8 U.S.C. § 1105a(b).

2. On June 12, 1981, during a hearing before Judge Hastings, Petitioners announced their intent to file an amended Petition to include all Haitians in exclusion proceedings. On June 16, 1981, an amended Petition for a Writ of Habeas Corpus was filed, along with the original complaint for declaratory, injunctive and mandatory relief-class action.

   The Court formally sanctioned the filing of the amended petition and complaint when it denied Defendants' motion to have parties dropped and claims severed in the complaint. See Order, dated July 6, 1981, docket no. 26.

tions and Regulations, 8 C.F.R. § 236.2(a) (1981), the Due Process Clause of the Fifth Amendment and the Protocol, or in the alternative, that Defendants denied Petitioners, and on information and belief threaten to deny Plaintiffs, their right to a private hearing under said regulation; (6) that Defendants denied Petitioners, and on information and belief threaten to deny Plaintiffs, their right to apply for political asylum in violation of INS Operations Instructions and Regulations, 8 C.F.R. § 236.-2(a) (1981), Section 208 of the Immigration Act, 8 U.S.C. § 1158, and the Protocol, and denied Petitioners and on information and belief threaten to deny Plaintiffs their right to notice of their right to seek political asylum in violation of the Protocol, the Due Process Clause of the Fifth Amendment, 8 C.F.R. § 208.1 *et seq.*, 8 C.F.R. § 236.3, Section 208 of the Immigration Act, 8 U.S.C. § 1158, INS Operations Instructions, and (7) that Defendants have applied a double standard regarding the exclusion of aliens, subjecting Haitian refugees but no other refugee groups to the above policies and procedures, resulting in discrimination and threatened discrimination based on race and national origin in violation of the Equal Protection requirements of the Due Process Clause of the Fifth Amendment and the Protocol.

An Amended Complaint was filed on August 24, 1981. In addition to deleting two parties named in the First Amended Petition/Complaint, and adding six new Plaintiffs, it was alleged that: "On or about August 10, 1981, this Court granted defendants' Motion to Vacate petitioners' final orders of exclusion and to remand to the Immigration and Naturalization Service.[3] As a result, the class designated as 'petitioners' in the Complaint, and defined as refugees for whom final orders of exclusion and deportation have been issued is non-existent and has been absorbed into the class designated as 'plaintiffs' in the complaint, and defined as refugees who have not yet been issued final orders of exclusion and deportation: As a result allegations in the Complaint concerning petitioners should not refer exclusively to plaintiffs."[4]

On September 30, 1981, the Court granted Plaintiffs' motions for class certification and for a preliminary injunction.[5] The class of Plaintiffs before the Court is defined as follows:

> The Class consists of all Haitian aliens who have arrived in the Southern District of Florida on or after May 20, 1981, who are applying for entry into the United States and who are presently in detention pending exclusion proceedings at various INS detention facilities, for whom an order of exclusion has not been entered and who are either: (1) unrepresented by counsel; or (2) represented by counsel pro bono publico assigned by the Haitian Refugee Volunteer Lawyer Task Force of the Dade County Bar Association.[6]

3. *See Order*, dated August 10, 1981, *nunc pro tunc* to July 10, 1981, docket no. 38.

4. On February 1, 1982, the Court orally ordered Plaintiffs to file an amended complaint within ten days in order to resolve certain ambiguities that were created when the first amendment to the complaint was filed on August 24, 1981. As of February 18, 1982, the second amended complaint has not been filed as ordered. Therefore, the Court is ruling on the motion to dismiss based on the allegations contained in the original complaint filed June 16, 1981, docket no. 6, and the amendment thereto, filed August 24, 1981, docket no. 50.

5. The Class was certified and the injunction issued prior to the transfer of this cause to the undersigned Judge.

6. The orders certifying the class and enjoining the Defendants from holding exclusion hearings were modified by this Court based on legal and factual developments that occurred subsequent to the entry of said orders. In particular, at the time of the transfer, there were motions pending for the decertification and clarification of the class certified by Judge Hastings. In addition, subsequent to the transfer, the Dade County Bar Association has made a significant and historic effort to obtain attorneys to represent indigent Haitian nationals, many of whom have been incarcerated at the Krome Detention Facility for over six months. In a matter of weeks, the Dade County Bar Association has been successful in obtaining over three hundred lawyers to represent the indigent Haitians so that their hearings may proceed and they may obtain some form of resolution of

The injunction permits the Defendants to proceed with exclusion hearings for those class members delineated in "(2)" of the definition but it prohibits entry of a final, non-appealable order of exclusion against them without prior notice being given to the Court. As to all other class members, the Defendants are enjoined from holding any exclusion proceedings until their claims are resolved.

## SECTION 106 OF THE IMMIGRATION AND NATIONALITY ACT, 8 U.S.C. § 1105a PRECLUDES JUDICIAL REVIEW OF COUNTS I, III, V AND VI IN THEIR ENTIRETY AND COUNTS IV AND VII IN PART

United States District Courts are tribunals of limited jurisdiction; their power to hear a case is dependent upon congressional implementation of one of the Constitution's grants of subject matter jurisdiction. As a result, it is imperative that the applicable statutory requirements relating to subject matter jurisdiction be satisfied before the Court proceeds to adjudicate the controversy.

The relevant statutory authority in the case at bar is Section 106 of the Immigration and Nationality Act, (hereinafter INA), 8 U.S.C. § 1105a. That section provides in part:

(b) *Notwithstanding the provisions of any other law*, any alien against whom a final order of exclusion has been made heretofore or hereafter under the provisions of section 236 of this Act or compa-rable provisions of any prior Act may obtain judicial review of such order by habeas corpus proceedings *and not otherwise*.

(c) An order of deportation or of exclusion shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration law and regulations or if he has departed from the United States after the issuance of the order. Every petition for review or for habeas corpus shall state whether the validity of the order has been upheld in any prior judicial proceeding, and, if so, the nature and date thereof, and the court in which such proceeding took place. No petition for review or for habeas corpus shall be entertained if the validity of the order has been previously determined in any civil or criminal proceeding unless the petition presents grounds which the court finds could not have been presented in such prior proceeding, or the court finds that the remedy provided by such prior proceeding was inadequate or ineffective to test the validity of the order. (Emphasis added)

Defendants' motion to dismiss concentrates its challenge on this Court's power to hear the claims delineated in the complaint. In the absence of a final order of exclusion, and exhaustion of administrative remedies, Defendants contend that the Court is divested of subject matter jurisdiction.[7] On the other hand, Plaintiffs believe that the

their asylum claims to remain in the United States.

The class in this case, prior to the modification order, was defined as only Haitians who were unrepresented. To leave the class in that status would have placed the Haitians in detention in the situation of choosing between having counsel or having the protection of this Court's injunction, and any relief that may ultimately be obtained from this lawsuit. Therefore, the Court modified the class to include Haitians represented through the Dade County Bar's project and, should similar projects be initiated in other areas where class members are detained, similar modifications would, in all likelihood, be forthcoming.

Simultaneously with the class modification, the Court modified the injunction to allow class members represented by counsel provided through the Dade County Bar's project to begin their exclusion hearings. However, the Court required the Defendants to provide notice to the Court prior to the entry of a final, nonappealable order of exclusion. *See Order Denying Decertification and Granting Modification of the Class and Preliminary Injunction*, dated February 9, 1982, docket no. 288.

7. Defendants' motion to dismiss does not assert that Section 1105a(b) bars the claim set forth in Count II. Rather, they base their jurisdictional challenge to that Count on the "political question" doctrine. *See Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). The Court declines to rule on that question at this time.

Court has jurisdiction regardless of the fact that final orders of exclusion have not been entered against them and they have not exhausted their administrative remedies. The essence of their argument is as follows:

> The terms of the statute, its legislative history and the cases defendants cite demonstrate that Congress in 8 U.S.C. § 1105a(b) only intended to limit the method of review to habeas corpus for *final* orders *after* they had been made or to determinations made *during* or *incident to* exclusion proceedings, not the separate or preliminary matters which comprise the essence of the claims asserted by Plaintiffs.

*Plaintiffs' Memorandum in Opposition to the Motion to Dismiss*, filed October 30, 1981, docket no. 146, at 24.

The resolution of these conflicting interpretations of Section 1105a must begin with the language of the statute itself. *Consumer Product Safety Comm. v. GTE Sylvania, Inc.*, 447 U.S. 102, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980); *Ernst & Ernst v. Hochfedler*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 99 S.Ct. 2479, 61 L.Ed.2d 82 (1979); *Watt v. Alaska*, 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). The statute provides that habeas corpus is the sole and exclusive procedure for the judicial review of final orders of exclusion. However, it does not explicitly preclude judicial review of procedures utilized in exclusion proceedings prior to the entry of a final order. In this respect, the provisions of Section 1105a(b) are ambiguous and unclear.

The cardinal principle of statutory construction is to give effect to the intent of Congress. *Watt v. Alaska, supra; Sinclair Refining v. Atkinson*, 370 U.S. 195, 215, 82 S.Ct. 1328, 1339, 8 L.Ed.2d 440 (1962); *Rogers v. Frito-Lay, Inc.*, 611 F.2d 1074 (5th Cir. 1980). When the intent of Congress is not clear from the language of the statute itself and the Court is faced with two possible interpretations of the statute, it is appropriate to rely on the legislative history to ascertain that intent. *Rogers v. Frito-Lay, Inc., supra; United States v. Noe*, 634 F.2d 860 (5th Cir. 1981); *Train v. Colorado Public Interest Research Group*, 426 U.S. 1, 96 S.Ct. 1938, 48 L.Ed.2d 434 (1976). A brief examination of the background to 8 U.S.C. § 1105a(b) indicates that Congress did not intend what Plaintiffs urge this Court to believe.

Until 1955, deportation and exclusion orders could only be reviewed by a writ of habeas corpus. Thus, in order to obtain judicial review of a deportation order, the alien had to be in custody. In 1955, the Supreme Court held that the judicial review provisions of the APA permitted an alien to obtain judicial review of a deportation order by an action for declaratory judgment. *Shaughnessy v. Pedreiro*, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868 (1955). The following year the Supreme Court held that an alien could also secure judicial review of an exclusion order by resort to the APA. *Brownell v. We Shung*, 352 U.S. 180, 77 S.Ct. 252, 1 L.Ed.2d 225 (1956).

In response to these developments, Congress, in 1961, enacted 8 U.S.C. § 1105a in order to overrule the *Shung* case and to prevent the abuses of the judicial system by which an alien could challenge his exclusion or deportation in successive lawsuits. H.Rep.No.1086, 87th Cong. 1st Sess., *reprinted in* [1961] 2 U.S.Code Cong. & Ad. News 2950, 2969, 2974. Section 1105a was intended to be the "single, separate, statutory form of judicial review of administrative orders for the deportation and exclusion of aliens from the United States ..." *Id.* at 2966. It was enacted because "habeas corpus is a far more expeditious judicial remedy than that of declaratory judgment" and because "[t]here is no validity or sound legal basis for any procedure which permits an excluded alien to extend his presence in the United States for 7 years while his eligibility to enter this country is being disputed in the courts." (as occurred in *Shung*). *Id.* at 2977.

Congress' intent in enacting Section 1105a was to end the seemingly endless procedural delays that allowed an excludable or deportable alien to prolong his departure from this country. *Foti v. Immigra-*

*tion and Naturalization Service*, 375 U.S. 217, 226, 84 S.Ct. 306, 312, 11 L.Ed.2d 281 (1963). The means to effect the purpose of the statute was to codify the sole and exclusive procedure for challenging the exclusion and deportation process. *Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 214, 88 S.Ct. 1970, 1975, 20 L.Ed.2d 1037 (1967).

It is inconceivable to believe that Congress would legislate against the delays that can follow the entry of a final order of exclusion without intending to cut off similar dilatory practices that might be utilized prior to the entry of an order. If such an interpretation is not abundantly clear, as this Court believes it is, from the language and statutory history of the statute, it becomes so when one analyzes the policy reasons for the statute's jurisdictional requirements. *See Perry v. Commerce Loan Co.*, 383 U.S. 392, 86 S.Ct. 852, 15 L.Ed.2d 827 (1966); *United States v. American Trucking Associations*, 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940); *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975); *Gates v. Collier*, 616 F.2d 1268 (5th Cir. 1980).

A basic principle of law, codified by the statute, is that courts will review only final orders. Interlocutory orders cannot and should not be reviewed because such a procedure would encourage procedural attacks which would confuse the administrative proceedings and substantially increase the burdens on this Court.

The requirement of finality is closely linked to the doctrine that administrative remedies must be exhausted, and it serves the same purpose.

A primary purpose is, of course, the avoidance of premature interruption of the administrative process. The agency, like a trial court, is created for the purpose of applying a statute in the first instance. Accordingly, it is normally desirable to let the agency develop the necessary factual background upon which decisions should be based. And since agency decisions are frequently of a discretionary nature or frequently require expertise, the agency should be given the first chance to exercise that discretion or to apply that expertise. And of course it is generally more efficient for the administrative process to go forward without interruption than it is to permit the parties to seek aid from the courts at various intermediate stages. The very same reasons lie behind judicial rules sharply limiting interlocutory appeals. Closely related to the above reasons is a notion peculiar to administrative law. The administrative agency is created as a separate entity and invested with certain powers and duties. The courts ordinarily should not interfere with an agency until it has completed its action, or else has clearly exceeded its jurisdiction. As Professor Jaffe puts it, "[t]he exhaustion doctrine is, therefore, an expression of executive and administrative autonomy." This reason is particularly pertinent where the function of the agency and the particular decision sought to be reviewed involve exercise of discretionary powers granted the agency by Congress, or require application of special expertise. * * * [J]udicial review may be hindered by the failure of the litigant to allow the agency to make a factual record, or to exercise its discretion or apply its expertise. In addition, other justifications for requiring exhaustion in cases of this sort have nothing to do with the dangers of interruption of the administrative process. Certain very practical notions of judicial efficiency come into play as well. A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. And notions of administrative autonomy require that the agency be given a chance to discover and correct its own errors. Finally, it is possible that the frequent and deliberate flouting of administrative process could weaken the effectiveness of an agency by encouraging people to ignore its procedures.

*McKart v. United States*, 395 U.S. 185, 194–5, 89 S.Ct. 1657, 1662–63, 23 L.Ed.2d 194 (1969); *Myers v. Bethlehem Shipbuilding*

*Corp.*, 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638 (1938); *Federal Power Commission v. Metropolitan Edison Co.*, 304 U.S. 375, 58 S.Ct. 963, 82 L.Ed. 1408 (1938).

■ The statute's "finality" and "exhaustion" requirements are consistent with this Court's conclusion that Congress intended Section 1105a to restrict, not expand, judicial relief for aliens. See *See Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1967); *Cobb v. Murrell*, 386 F.2d 947, 951 (5th Cir. 1967); *Marcello v. Dist. Dir. of Immigration*, 634 F.2d 964, 965 (5th Cir. 1981). Interpreting the statute to allow Plaintiffs to challenge "separate or preliminary matters" without complying with the statute's requirements would be antithetical to Congress' intent when enacting Section 1105a. Such an interpretation is impermissible when, as here, Congress' intent is clear. *Sinclair Refining Co. v. Atkinson, supra; United States v. Second Nat'l. Bank of North Miami*, 502 F.2d 535 (5th Cir. 1974) *cert. denied*, 421 U.S. 912, 95 S.Ct. 1567, 43 L.Ed.2d 777 (1974); *Saxon v. Georgia Ass'n. of Independent Insurance Agents, Inc.*, 399 F.2d 1010 (5th Cir. 1968).

Therefore, the Court holds that Plaintiffs may only seek judicial review of the policies and procedures that are used during and incident to their exclusion proceedings by habeas corpus and only after meeting the jurisdictional requirements of Section 1105a.[8]

8. There are no allegations in the complaint that the remedies provided by the statute and regulations are inadequate or ineffective. *See, e.g., NLRB v. Industrial Union of Marine and Shipbuilding Workers*, 391 U.S. 418, 88 S.Ct. 1717, 20 L.Ed.2d 706 (1968); *Walker v. Southern Railway*, 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966), and the Court does not find this to be a case that falls into one of the exceptions to the exhaustion doctrine. *See Patsy v. Florida International University*, 634 F.2d 900 (5th Cir. 1981) (en banc). This is true especially in light of the absence of any final orders.

9. All of the Counts hereafter dismissed challenge procedures or practices that would be encompassed by a final order of exclusion. *See*

## TOTAL DISMISSAL NOT WARRANTED

This conclusion does not mandate dismissal of the entire complaint. The Court is of the view that it is without subject matter jurisdiction to hear only those portions of Counts I and III through VII that would "merge" into a final order of exclusion. "Merge" refers to any practice, policy or procedure that is used during or incident to the exclusion proceeding which is reviewable on appeal to the Board of Immigration Appeals (hereinafter "BIA") or which may be reviewed in habeas corpus proceedings in the district court. *See* 8 U.S.C. § 1226(b); 8 C.F.R. §§ 3.1, 236.7; C. Gordon & H. Rosenfeld, Immigration Law and Procedure § 1.10; *Foti v. Immigration and Naturalization Service, supra*, 375 U.S. at 229, 84 S.Ct. at 314; *Cheng Fan Kwok v. Immigration and Naturalization Service, supra*, 392 U.S. at 211, 216, 88 S.Ct. at 1973, 1976; *Chadha v. Immigration and Naturalization Service*, 634 F.2d 408 (9th Cir. 1980).[9] The Court finds that the following Counts, or portions thereof, would merge into any final order of exclusion that may be entered and that the Court is without subject matter jurisdiction to hear them at this time:

1. As alleged, Count I is DISMISSED in its entirety. If an alien has a *right* to be represented by counsel during an interview with an INS representative, and *if* a statement is taken from him in derogation of that right, which is used in subsequent proceedings and results in the entry of a final order of exclusion, that practice or procedure is reviewable on appeal to the BIA and in habeas proceedings.[10]

*Haitian Refugee Center v. Civiletti*, 503 F.Supp. 442, 458 (S.D.Fla.1980). The allegations of said Counts do not seek review of discretionary relief collateral to exclusion proceedings as permitted by *Foti* and *Cheng, supra*. The Court has retained jurisdiction over those portions of the complaint that seek review of discretionary acts.

10. The Court intimates no views on whether such interviews constitute primary or deferred inspection or whether they fall within the provisions of 8 C.F.R. § 292.5(b). To the extent that information obtained in said interviews is used to impeach the alien, *United States v. Havens*, 446 U.S. 620, 100 S.Ct. 1912, 64

2. As alleged, Count III is DISMISSED in its entirety. To the extent that any alleged failure to give an alien notice of the nature of his exclusion hearing results in the entry of a final order of exclusion, that failure is reviewable on appeal to the BIA and in habeas proceedings.

3. As alleged, Count IV is DISMISSED in part. To the extent that Count IV asserts a claim that the Haitians in detention have a right of access to persons who are not in detention (counsel or otherwise), that claim is DISMISSED. It is the view of the Court that if such a denial of access in fact takes place and results in harm to the alien in the form of entry of a final order of exclusion, that practice can be reviewed on appeal to the BIA and in habeas proceedings.

4. As alleged, Count V is DISMISSED in its entirety. These procedures are reviewable after entry of a final order of exclusion by appeal to the BIA and in habeas proceedings. Moreover, the Defendants have agreed to cease using mass hearings and have further agreed to give each individual alien, presently in the class defined by the Court, an exclusion hearing and the choice of having a private or public hearing. Thus, Count V is MOOT.

5. As alleged, Count VI is DISMISSED in its entirety. If and when the alleged failure to give an alien notice of his alleged right to claim political asylum results in the entry of a final order of exclusion, that procedure may be challenged in an appeal to the BIA and/or in habeas corpus proceedings.

6. As alleged, Count VII is DISMISSED in part. To the extent that Count VII alleges that the challenged policies and procedures heretofore dismissed are being applied in a discriminatory fashion, Count VII is DISMISSED. If the alleged discrimination results in a final order of exclusion, that discrimination can be challenged on appeal to the BIA and/or in habeas corpus proceedings.

L.Ed.2d 559 (1980) and *United States v. Rada-Solano*, 625 F.2d 577 (5th Cir. 1980), suggest

The Court retains jurisdiction over the following claims:

1. Count II in its entirety.

2. Count IV insofar as it alleges that Haitians in detention have First Amendment rights that require them to be given access to persons not in detention (counsel or otherwise). The Court will also hear HRC, Inc.'s claim of a right to access to persons in detention.

3. Count VII only insofar as it alleges that the detention "policy" is currently being applied in a discriminatory fashion against Plaintiffs.

## PLAINTIFFS LACK STANDING TO CHALLENGE THE PROCEDURES USED IN EXCLUSION HEARINGS

A more fundamental bar to this Court's exercise of jurisdiction over the Counts heretofore dismissed is Article III of the Constitution.

> [T]he judicial power of federal courts is constitutionally restricted to "cases" and "controversies." As is so often the situation in constitutional adjudication, those two words have an iceberg quality, containing beneath their surface simplicity submerged complexities which go to the very heart of our constitutional form of government. Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

that they are admissible even if illegally obtained.

Justiciability is itself a concept of uncertain meaning and scope. Its reach is illustrated by the various grounds upon which questions sought to be adjudicated in federal courts have been held not to be justiciable. Thus, no justiciable controversy is presented when the parties seek adjudication of only a political question, when the parties are asking for an advisory opinion, when the question sought to be adjudicated has been mooted by subsequent developments, and when there is no standing to maintain the action.

*Flast v. Cohen*, 392 U.S. 83, 94–5, 88 S.Ct. 1942, 1949–50, 20 L.Ed.2d 947 (1968).

■ Standing requires "at an irreducible minimum ... the party who invokes the court's authority to 'show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant,' *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 99 [99 S.Ct. 1601, 1607–08, 60 L.Ed.2d 66] (1979), and that the injury 'is likely to be redressed by a favorable decision,' *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38, 41 [96 S.Ct. 1917, 1924, 1925, 48 L.Ed.2d 450] (1976)." *Valley Forge Christian College v. Americans United For Separation of Church and State, Inc.*, —— U.S. ——, ——, 102 S.Ct. 752, 758, 70 L.Ed.2d —— (1982). The allegations of the com-

plaint before the Court fail to meet every element of this test.

■ The complaint fails to establish that any causal relationship exists between the putatively illegal conduct of the Defendants and the injury Plaintiffs allege they are threatened with.[11] There has been no showing that the policies and procedures complained of will continue to be used,[12] that use of these procedures will result in the entry of final orders of exclusion, or that the administrative process will not cure the alleged defects.[13] *Hernandez v. Immigration and Naturalization Service*, 539 F.2d 384 (5th Cir. 1976). More significantly, Plaintiffs have not alleged that a favorable decision on the merits is likely to redress their injury. Even if this Court were to grant all the relief Plaintiffs seek, they would still be subject to exclusion proceedings and possibly deportation.

Unless and until the challenged practices result in the entry of final orders of exclusion against Plaintiffs, this Court finds as a matter of law that they suffered no injury in fact.[14] To the extent that the complaint alleges "on information and belief" the allegedly illegal procedures will be used in processing Haitian aliens, there is a claim of threatened injury, but this allegation alone will not meet the test of standing. Apart from the minimal constitutional requirement of injury, the Supreme Court has rec-

---

**11.** Such a relationship could easily be established, if it exists, during the administrative proceedings thereby providing this Court with an adequate record on which to render a decision.

**12.** It is questionable which of the challenged practices and procedures are still being used or would be used if the injunction were lifted. The fact that this Court must engage in such speculation supports its view that Plaintiffs' claims are not justiciable at this time.

**13.** It is for these reasons that the Court, in its order modifying the class, found "commonality" among class members only with regard to the detention issues. Clearly there can be no common questions of law and fact where the individual Plaintiffs will be exposed to different practices and procedures during their exclusion hearings. This is true for the typicality requirement as well. The only claims where the named Plaintiffs have presented issues of law

or fact common or typical to the class are in connection with their continued detention.

**14.** Injury is not the use of an allegedly illegal practice procedure but the adverse consequence thereof. Thus, Plaintiffs have a perfect right to object to any practice or policy they find to be objectionable but they are not entitled to review of that practice unless and until they are injured by it, to wit, it results in the entry of a final order of exclusion.

Were this Court to proceed based on the allegations of threatened injury it would have to speculate as to whether and how the alleged unlawful practices would be utilized against the Plaintiffs. The Court believes that it is best not to engage in speculation of this nature and that the need to do so indicates the absence of a ripe controversy. *See Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1971); *O'Shea v. Littleton*, 418 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).

ognized other limits on the class of persons who may invoke the Court's decisional and remedial powers. *See Schlesinger v. Reservists to Stop the War*, 418 U.S. 208, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974); *United States v. Richardson*, 418 U.S. 166, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (assertion of a generalized grievance shared in substantially equal measure by all or a large class of citizens does not normally warrant exercise of jurisdiction); *Tileston v. Ullman*, 318 U.S. 44, 63 S.Ct. 493, 87 L.Ed. 603 (1943); *United States v. Raines*, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960); *Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) (Plaintiffs must generally assert their own rights and interest, and cannot rest their claim to relief on the legal rights or interests of third parties).[15] One such limit requires that the injury be to a "legal right" of the Plaintiff. *Tennessee Electric Power Co. v. Tennessee Valley Authority*, 306 U.S. 118, 59 S.Ct. 366, 83 L.Ed. 543 (1929); *Linda R. S. v. Richard D.*, 410 U.S. 614, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973); *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). The standing question in such cases is whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the Plaintiffs' position a right to judicial relief. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1974).

Under the Constitution, there is no question that aliens who seek to enter the United States "may not do so under any claim of right. Admission of aliens to the United States is a privilege granted by its sovereign United States Government. Such privilege is granted to an alien only upon such terms as the United States shall pro-

scribe." *Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 312, 94 L.Ed. 317 (1950). It matters not whether the alien is outside the borders of the United States, as in *Kleindienst v. Mandel*, 408 U.S. 753, 762, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972); or is in detention as an excludable alien as in *Shaughnessy v. Mezei*, 345 U.S. 206, 210–215, 73 S.Ct. 625, 628–30, 97 L.Ed. 956 (1953); or has been paroled pursuant to 8 U.S.C. § 1182(d)(5) as in *Leng May Ma v. Barber*, 357 U.S. 185, 188–189, 78 S.Ct. 1072, 1074–75, 2 L.Ed.2d 1246 (1958); *Kaplan v. Tod*, 267 U.S. 228, 45 S.Ct. 257, 69 L.Ed. 585 (1925); he is deemed to be unadmitted and has "[n]o constitutional right to entry to this country as a non-immigrant or otherwise." *Kleindienst v. Mandel, supra*, 408 U.S. at 762, 92 S.Ct. at 2581.

In the absence of constitutional right of entry, the threatened injury to Plaintiffs must exist by virtue of "statutes creating legal rights, the invasion of which creates standing . . ." *See Linda R. S. v. Richard D., supra*, 410 U.S. at 617 n.3, 93 S.Ct. at 1148 n.3; *Sierra Club v. Morton, supra*, 405 U.S. at 732, 92 S.Ct. at 1364. The Immigration and Nationality Act does not give the Plaintiffs a right to enter this country; rather, it establishes a procedure through which an administrative decision can be made on whether an alien should be admitted. *Fiallo v. Bell*, 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977).[16]

Throughout the proceedings in this cause, the Defendants have taken the position that the Act entitles Plaintiffs to an exclusion hearing. Indeed, justice requires that the Plaintiffs, having been held in detention for months awaiting exclusion proceedings, be

---

**15.** In this regard, the Court has serious questions about Plaintiff HRC's standing to assert the claims of its "members" while asserting claims of its own. HRC is neither a traditional voluntary association nor the kind of entity allowed associational standing in *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). Instead, HRC purports to make Haitians members of its organization by its definition, without any voluntary act or

choice on their part. Moreover, the Court has found, infra, that its members have no standing to sue in their own right and, therefore, one of the prerequisites to organizational standing has not been met. *Id.* at 343, 97 S.Ct. at 2441.

**16.** "Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Knauff v. Shaughnessy*, 338 U.S. 537, 544, 70 S.Ct. 309, 313, 94 L.Ed. 317 (1950).

given the opportunity to be heard.[17] But that does not mean that the statute confers standing on these Plaintiffs to challenge the manner in which INS interprets and applies the statute to them particularly when they have not been injured thereby.

Based on the reasons set forth above, the Court finds that the Plaintiffs lack standing to assert the claims heretofore dismissed. This conclusion serves to reinforce the Court's prior ruling that judicial review is available only after the entry of a final order of exclusion and exhaustion of administrative remedies. It is questionable whether any alien that has not been subject to the exclusion procedure would have standing to challenge procedures that "on information and belief" were going to be used against him.[18] Just as Congress cannot, by an affirmative act, expand this Court's jurisdiction beyond that provided for in Article III, *Barlow v. Collins*, 397 U.S. 159, 173, 90 S.Ct. 832, 841, 25 L.Ed.2d 192 (1969), an omission or ambiguity in a statute cannot be construed to allow the adjudication of a nonjusticiable controversy. The procedures set forth in Section 1105a is the sole and exclusive means for review of the issues before this Court and until its prerequisites are complied with, this Court is without jurisdiction to hear Plaintiffs' claims.[19]

## CONCLUSION

In spite of the Court's lack of jurisdiction over many of the claims delineated in the complaint, it appears that much of the relief sought therein will be forthcoming. This conclusion is based on Defendants' unequivocal representations to the Court that, with regard to this particular class, individual exclusion hearings will be afforded regardless of the Court's ruling on the merits. In order to insure that these representations are complied with, the Court directs the Defendants to file, within sixty (60) days from the date of this Order, a detailed plan setting forth the method and means that will be utilized for conducting individual exclusion hearings with regard to all class members.[20] Because the Court antici-

---

**17.** Most, if not all, of the aliens before this Court did not arrive at ports of entry of the United States. *See* 8 C.F.R. §§ 100, 235.1(a). They arrived on any beach where the currents take them, or were apprehended prior to reaching these shores. There has been no colorable attempt to comply with the immigration laws; rather, the Haitians have attempted to thwart the orderly procedures for entry by arriving in masses, with no way to return to their homeland, and thereafter by uniformly making claims of persecution in their homeland which are difficult, if not impossible, to verify. Under such circumstances there is a serious question, to be decided another day, as to whether the INS would have a right to exclude and deport such aliens without a hearing.

**18.** If a literal construction of the words of a statute would lead to an absurd result, the statute must be construed so as to avoid that result. *Rector of Holy Trinity Church v. United States*, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226 (1892); *United States v. Mendoza*, 565 F.2d 1285, 1288 (5th Cir. 1978). The Court feels that it would be absurd to read Section 1105a(b) as allowing Plaintiffs to challenge the procedures they believe INS will use during their exclusion hearings before being subject to such hearings and without suffering any injury in fact. The construction the Court has given to that Section will avoid such a result.

**19.** Plaintiffs' inability to establish an independent basis for this Court to hear the claims heretofore dismissed and the Court's finding that they lack standing with regard to those claims, precludes the Court from granting mandamus relief pursuant to 28 U.S.C. § 1361. *Starbuck v. City and County of San Francisco*, 556 F.2d 450 (9th Cir. 1970). Plaintiffs' failure to exhaust their administrative remedies also bars mandamus relief. *See Beale v. Blount*, 461 F.2d 1133 (5th Cir. 1972); *Lane v. Hanberry*, 593 F.2d 648 (5th Cir. 1979).

Similarly, 28 U.S.C. §§ 2201, 2202 do not provide this Court with an independent jurisdictional basis for deciding the dismissed claims. *See Seibert v. Baptist*, 594 F.2d 423, 428 n.17 (5th Cir. 1979) (citing *Red Lobster Inns of America, Inc. v. New England Oyster House, Inc.*, 524 F.2d 968, 969 (5th Cir. 1975); *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 666 (5th Cir. 1967).

The Court reserves ruling on Defendants' Motion to Dismiss or Transfer for Improper Venue.

**20.** The Court's supervision of this plan should be construed to mean that it affords the aliens who participate therein all of the rights to which they are entitled under the Immigration laws and regulations. Moreover, Plaintiffs are in no way precluded from seeking, if necessary, administrative and judicial review.

pates initiation of pro bono representation projects in all areas where class members are detained similar to that embarked upon by the Dade County Bar Association, the plan submitted shall be structured on the assumption that all class members will be individually represented by counsel. The Court will retain jurisdiction over the class until the plan is operational and its injunction remains in full force and effect until further order of the Court.