Thurman E. BUCHANAN et al., Appellants,

v.

ST. LOUIS SOUTHWESTERN RAIL-
WAY CO., Appellee.

No. 16651.

Court of Civil Appeals of Texas.

Dallas.

Feb. 4, 1966.

Rehearing Denied March 4, 1966.

Parnass, Weatherhogg & McGuire, Irv-
ing, for appellants.

Touchstone & Sampels, Dallas, for ap-
pellee.

DIXON, Chief Justice.

Eighteen plaintiffs, appellants here,
brought separate suits in district courts in
Dallas, Texas, against St. Louis South-
western Railway Company, hereinafter
called Railway, for recovery in a lump sum
of separation allowances and wages alleged
to be due them as former employees under
Section 9 of the "Agreement of May 1936,
Washington, D. C.", hereinafter called the
Washington Agreement. In the alternative
they claim their suits are common law ac-
tions for damages because of wrongful
discharge from their employment.

Railway in each case filed a plea alleging exclusive jurisdiction of the National Railroad Adjustment Board under the provisions of the Railway Labor Act, 45 U.S.C.A., Sections 151 et seq.; and a plea in abatement alleging that the plaintiff had not exhausted his administrative remedies before filing suit, such administrative procedures being prescribed by 45 U.S.C.A., Sections 152 and 153, by Section 13 of the Washington Agreement, and by the "Agreement Governing Hours of Service and Working Conditions" of 1954.

The eighteen causes were consolidated for the sole purpose of hearing and determining Railway's pleas to the jurisdiction and in abatement.

After hearing evidence the court sustained Railway's pleas and dismissed the consolidated causes of action. We have concluded that the judgment of dismissal should be affirmed.

## FACTS

The material facts are for the most part undisputed. The Washington Agreement was entered into on May 21, 1936 by certain carriers including Railway and several labor organizations, acting through their collective bargaining agents, including appellants' representative. For a history of the Washington Agreement and its purposes see Brotherhood of Railroad Trainmen for St. Louis Southwestern Railway Co. et al v. St. Louis Southwestern Railway Co. et al, D.C., 220 F.Supp. 319.

The Washington Agreement provides for the coordination by railroads to enable two or more of them to unify, consolidate, merge or pool in whole or in part their facilities or services. Provision is made for the protection of employees who will be adversely affected by such coordination.

Under Section 7 of the Washington Agreement an employee who is deprived of employment, or whose position is abolished as a result of the coordination and who is unable to obtain another position by the exercise of his seniority rights, may draw a coordination allowance for a period of time of 60 per cent of his average monthly wage. Under Section 9 such employee may resign if he wishes and receive a lump sum separation allowance. All the appellants in this case seek to recover lump sum separation allowances.

Railway and another carrier, the Southern Pacific Company, Texas and Louisiana Lines, formerly owned and operated separate freight station facilities and services in Dallas, Texas. To effect a coordination of these facilities and services the two railroads and The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees entered into an agreement called "Memorandum" whereby the provisions of the Washington Agreement were implemented to protect each employee adversely affected by the coordination.

The coordination took place January 1, 1962. In order to determine the status of employees in the unified facilities the seniority rosters of the two carriers were dovetailed. Thus it was ascertained who would have prior rights to the available positions.

Appellee's employees fall into two categories: (1) regularly assigned employees and (2) furloughed employees. The latter are employees who do not have regularly assigned jobs, but who protect their seniority rights by filing their names and addresses in accordance with Rule 15–5 of the Clerk's Agreement.

The evidence before us shows that prior to the coordination six of appellants were furloughed employees, but two of them obtained regularly assigned jobs as a result of the coordination. Twelve of appellee's employees had regularly assigned jobs before and after the coordination.

On August 8, 1963 nine of the regularly assigned employees were "bumped", that is, displaced, by employees having greater seniority rights. This was due to loss of business which occurred when Acme Fast

Freight at Dallas elected to do its own warehousing work rather than to have Railway do so, as the latter had in the past.

In June 1964 one employee's job was abolished because of a general decline in business and another employee was displaced as a result of loss of work previously performed by Railway.

It is Railway's contention that as to sixteen of appellants there still exists an employer-employee relationship as their names and addresses are listed on Railway's current seniority roster. As to two of appellants who were on the seniority roster it is Railway's contention the two failed to report for duty after being called, therefore their names were properly removed from the seniority roster in accordance with Rules 15–5 and 15–6.

Appellants claim they have resigned and are entitled to a lump sum severance allowance as provided by Section 9 of the Washington Agreement. Railway claims that the sixteen appellants who are still carried on its seniority roster are not entitled to the lump sum severance allowance; and that the two appellants who failed to report, as above stated, when called for duty, were properly removed from the seniority roster.

## OPINION

In their first and second points on appeal appellants allege error on the part of the court in sustaining Railway's pleas to the jurisdiction and in abatement and in dismissing appellants' suits.

Appellants rely on the holdings of the Supreme Court of the United States in Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089 (1941); Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795 (1950); and Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 73 S.Ct. 906, 97 L. Ed. 1325 (1953). The above cases hold in

effect that when a claimant's status as an employee of a railroad has come to a permanent end and the claimant is not seeking reinstatement he may sue directly in court—State or Federal—without first presenting his claim to the National Railroad Adjustment Board, and without exhausting his administrative remedies as provided in collective bargaining agreements. In the Moore and Slocum cases it was said that the reason for the holding, or at least one of the reasons, was that the claim of a discharged employee not seeking reinstatement did not involve questions of future relations between a railroad and its other employees.

Whatever may have been the law in the past the latest pronouncement of the Supreme Court of the United States unquestionably points out a course which leads away from the Moore, Slocum and Koppal cases and from the position which appellants have taken. We refer to the holdings in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

In the Maddox case the Supreme Court was not dealing with a railroad employee. In fact, the court in its Footnote No. 14 stated that by refusing to extend the Moore holding to the Maddox case, it did not mean to overrule Moore in the field of the Railway Labor Act—consideration of such action properly awaiting a case presented under the Railway Labor Act.[1] But the Supreme Court discussed the Moore and Koppal cases, saying:

> "Once it is established that the federal rule discussed above applies to grievances in general, it should next be inquired whether the specific type of grievance here in question—one relating to severance pay—is so different in kind as to justify an exception. Moore v. Illinois Central R. Co. and Transcontinental & Western Air, Inc. v. Koppal, supra, are put forward for the proposition that it is.

1. Justice Black in his dissenting opinion says "The Court * * * has raised the overruling axe so high that its falling is just about as certain as the changing of the seasons."

" * * * Since that time the Court has made it clear that substantive federal law applies to suits on collective bargaining agreements covered by § 204 of the Railway Labor Act, * * *. *Thus a major underpinning for the continued validity of the Moore case in the field of the Railway Labor Act, and more importantly in the present context, for the extension of its rationale to suits under § 301(a) of the LMRA, has been removed.*" (Emphasis ours.)

The court made other general pronouncements which it seems to us are applicable to the present case:

"*As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union* as the *mode of redress.* * * *. (Emphasis ours.)

"A contrary rule which would permit an individual employee to completely sidestep available grievance procedures in favor of a lawsuit has little to commend it. In addition to cutting across the interests already mentioned, it would deprive employer and union of the ability to establish a uniform and exclusive method for orderly settlement of employee grievances. If a grievance procedure cannot be made exclusive, it loses much of its desirability as a method of settlement.

" * * * *Although it is true that the employee asserting the claim will necessarily have accepted his discharge as final, it does not follow that the resolution of his claim can have no effect on future relations between the employer and other employees. Severance pay and other contract terms governing discharge are of obvious concern to all employees, and a potential cause of dispute so long as any employee maintains a continuing employment relationship.* * * * if applicable law

did not require resort to contract procedures, the inability of the union and employer at the contract negotiations stage to agree upon arbitration as the exclusive method of handling permanent shutdown severance claims in all situations could have an inhibiting effect on reaching an agreement. * * * (Emphasis ours.)

"There are, then, positive reasons why the general federal rule should govern grievances based on severance claims as it does others."

Our appraisal of the Maddox case is in harmony with that of the United States Court of Appeals for the Fourth Circuit as stated in Walker v. Southern Railway Co., 354 F.2d 950, decided November 3, 1965.

■■■■ Appellants seek to remove their grievances from the jurisdiction of the National Railroad Adjustment Board and to avoid exhausting their administrative remedies before suing in court by alleging in the alternative that their suits are common law actions for damages for wrongful discharge. There is no merit to this claim. A careful reading of the pleadings as a whole leads to the inescapable conclusion that appellants' grievances are proper subjects for the application of collective bargaining agreements. The pleaded facts of the cases necessarily make them so, and the mere alternative designation of appellants' actions as common law damage suits cannot change the true nature of their alleged grievances so as to take away the exclusive jurisdiction of the National Railroad Adjustment Board, or the duty of appellants to pursue their administrative remedies. In their brief appellants frankly state that they were wrongfully discharged under the terms of the Washington Agreement and the computation of their damages is a matter of simple arithmetic under the terms set out in the Washington Agreement.

In their third and fourth points on appeal appellants challenge the authority of the court to consolidate the eighteen causes

of action for the limited purpose of passing on the pleas to the jurisdiction and in abatement; and complain of the court's refusal to grant them a jury trial on Railway's two pleas.

The pleadings and prayers for relief are the same in each of the eighteen cases and so are the pleas of Railway. It was not error to consolidate them to determine the identical law issues presented in the eighteen cases by the pleaded facts. Rule 174, Texas Rules of Civil Procedure. Since only law issues were raised by the pleas to the jurisdiction and in abatement there was no occasion for a jury trial.

Appellants' points on appeal are overruled. The judgment is affirmed.

BATEMAN, J., not sitting.