WALKER *v.* SOUTHERN RAILWAY CO.

No. 89. Argued November 10, 1966.—Decided December 5, 1966.

*J. Nat Hamrick* argued the cause for petitioner. With him on the brief was *Fred D. Hamrick.*

*Jerome Ackerman* argued the cause and filed a brief for respondent.

PER CURIAM.

Under *Moore* v. *Illinois Central Railroad Co.,* 312 U. S. 630, decided in 1941, a discharged railroad employee aggrieved by the discharge may either (1) pursue his remedy under the administrative procedures established by an applicable collective bargaining agreement subject to the Railway Labor Act, and his right of review before the National Railroad Adjustment Board, or (2) if he accepts his discharge as final, bring an action at law in an appropriate state court for money damages if the state courts recognize such a claim. See also *Slocum* v. *Delaware, L. & W. R. Co.,* 339 U. S. 239, 244; *Transcontinental & Western Air, Inc.* v. *Koppal,* 345 U. S. 653. The question in this case is whether those decisions should be overruled in light of *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650, decided in 1965.

Petitioner was a yard fireman in the employ of respondent, the railroad. He sued in a North Carolina court on a claim that respondent had unlawfully discharged him on May 29, 1957, in violation of its collective bargaining agreement with the Brotherhood of Locomotive Firemen and Enginemen. The action was removed by respondent to the Federal District Court by reason of diversity of citizenship. The District Court overruled respondent's challenge to its jurisdiction, citing *Moore, Slocum,* and *Koppal,* and entered a judgment for damages in petitioner's favor. 237 F. Supp. 278. The Court of Appeals for the Fourth Circuit reversed, holding that *Maddox,* decided after the entry of the District Court judgment, required that petitioner first exhaust his administrative remedies. 354 F. 2d 950. Since our opinion in *Maddox* expressly stated that "we do not mean to overrule [*Moore* v. *Illinois Central R. Co.*] within the field of the Railway Labor Act" but that "[c]onsideration of such action should properly await a case presented" under that Act, 379 U. S., at 657, n. 14, we granted certiorari, 384 U. S. 926. We reverse.

*Maddox* presented the question whether contract grievance procedures provided in a collective bargaining agreement subject to the Labor Management Relations Act, 1947, and culminating in binding arbitration might be sidestepped in favor of a lawsuit, in light of the federal policy reflected in the LMRA of favoring such agreed-upon contract grievance procedures as the preferred method for settling disputes. The action was brought in an Alabama state court by an employee of the Republic Steel Corporation for severance pay allegedly owed him under the terms of a collective bargaining agreement which contained such a grievance procedure. We held that contract grievance procedures voluntarily incorporated by the parties in collective bargaining agreements

subject to the LMRA, unless specified by the parties to be nonexclusive, must be exhausted before direct legal redress may be sought by the employee.

Provision for arbitration of a discharge grievance, a minor dispute, is not a matter of voluntary agreement under the Railway Labor Act; the Act compels the parties to arbitrate minor disputes before the National Railroad Adjustment Board established under the Act. *Brotherhood of Railroad Trainmen* v. *Chicago River & Indiana R. Co.*, 353 U. S. 30. Both at the time of petitioner's alleged discharge and at the time he brought his lawsuit, there was considerable dissatisfaction with the operations of the National Railroad Adjustment Board and with some of the statutory features. Congress initiated an inquiry and found that among other causes for dissatisfaction, "railroad employees who have grievances sometimes have to wait as long as 10 years or more before a decision is rendered [by the Board] on their claim"; for example, "the First Division [which has jurisdiction over disputes involving yard service employees of petitioner's class] . . . has never been current in its work, [and has] a backlog of approximately 7½ years . . . ." H. R. Rep. No. 1114, 89th Cong., 1st Sess., at 3, 5; S. Rep. No. 1201, 89th Cong., 1st Sess., at 2. The Congress also found that "if an employee receives an award in his favor from the Board, the railroad affected may obtain judicial review of that award by declining to comply with it. If, however, an employee fails to receive an award in his favor, there is no means by which judicial review may be obtained." H. R. Rep., *supra,* at 15. S. Rep., *supra,* at 3.

In consequence, Congress enacted Public Law 89–456, 80 Stat. 208, effective June 20, 1966, which drastically revises the procedures in order to remedy the defects. Of course the new procedures were not available to petitioner, and his case is governed by *Moore, Slocum,*

and *Koppal.* The contrast between the administrative remedy before us in *Maddox* and that available to petitioner persuades us that we should not overrule those decisions in his case.

The judgment of the Court of Appeals is reversed and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE HARLAN, whom MR. JUSTICE STEWART and MR. JUSTICE WHITE join, dissenting.

I dissent because I believe this Court's decision in *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650, requires the explicit overruling of *Moore* v. *Illinois Central R. Co.,* 312 U. S. 630, a case that has already been all but completely vitiated by subsequent decisions.

In *Moore,* a railroad trainman brought an action for damages based upon an alleged wrongful discharge without first exhausting administrative remedies. Federal jurisdiction was invoked on the ground of diversity; at that time an employment contract under the Railway Labor Act was thought to be governed, like ordinary contracts, by state law. The applicable law in that case—that of Mississippi—did not require exhaustion of remedies. The Court held that nothing in the Railway Labor Act required a contrary result.

The premise of the *Moore* decision, that state law was applicable to this type of labor contract, was removed in a series of decisions holding that labor contracts governed by the Labor Management Relations Act, 1947, and the Railway Labor Act are subject to federal substantive law, not state law. *Textile Workers* v. *Lincoln Mills,* 353 U. S. 448; *International Assn. of Machinists* v. *Central Airlines, Inc.,* 372 U. S. 682. In *Maddox, supra,* the doctrine of exhaustion of remedies was declared by

this Court to be a part of this federal labor law: "As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress." 379 U. S., at 652. Strong policy arguments were adduced in *Maddox* to support this general rule. See 379 U. S., at 652–653; Cox, Rights Under a Labor Agreement, 69 Harv. L. Rev. 601, 647–652 (1956).

I can see no reason why this rule should be thought inapplicable to cases under the Railway Labor Act. Although the *Maddox* decision did not explicitly cover such cases, the single dissenting Justice recognized that the Court, ". . . while declining expressly to overrule . . . [*Moore* and its progeny] in this case, has raised the overruling axe so high that its falling is just about as certain as the changing of the seasons." 379 U. S., at 667. The only two courts of appeals to deal with the impact of *Maddox* on *Moore* have concurred in declaring that exhaustion of remedies is now required in the railway labor field. *Walker* v. *Southern R. Co.,* 354 F. 2d 950 (C. A. 4th Cir.); *Neal* v. *System Bd. of Adjustment,* 348 F. 2d 722 (C. A. 8th Cir.). A Pennsylvania appellate court has refused to permit a suit like this one in state court on the ground that since *Maddox,* "We cannot see how the *Moore* case is still effective to permit a recovery in a state court suit in this case." *Beebe* v. *Union R. Co.,* 205 Pa. Super. 146, 153, 208 A. 2d 16, 20. Other state courts have reached the same conclusion. *Buchanan* v. *St. Louis Southwestern R. Co.,* 400 S. W. 2d 362; *Caffery* v. *New York Central R. Co.,* 24 App. Div. 2d 1075, 265 N. Y. S. 2d 742.

The rule of exhaustion of contractual and administrative remedies is a salutary one in an area in which specialization is important and the expertise of certain arbitral

bodies is recognized. In *Whitehouse* v. *Illinois Central R. Co.*, 349 U. S. 366, 371, the Court noted that " 'The railroad world is like a state within a state. Its population of some three million, if we include the families of workers, has its own customs and its own vocabulary, and lives according to rules of its own making.' Garrison, The National Railroad Adjustment Board: A Unique Administrative Agency, 46 Yale L. J. 567, 568–569." It is true of course, as the Court observes, that in the Labor Managment Relations Act cases arbitration is imposed contractually while under the Railway Labor Act arbitration by the Adjustment Board is mandatory for all "minor" contractual disputes. If anything, this distinction weighs in favor of respecting Congress' determination that disputes as to proper practices under a railroad labor contract be settled—at least initially—through direct negotiation between the affected parties and, that failing, by Adjustment Board arbitration.

The Court's only rationale for refusing to take the step of formally overruling *Moore* at this time, a step to which current precedent, logic, and policy all so persuasively point, is that there has apparently been some dissatisfaction with the speed of the Board's procedures and with the statute's scope of appeal. This dissatisfaction is properly the subject of congressional concern. It is in my view, however, unsound for this Court to make the question whether exhaustion of remedies applies depend upon our decision as to how effectively we think the Board is functioning. It should be enough, as a unanimous Court said just last Term, that Congress ". . . invested the Adjustment Board with the broad power to arbitrate grievances and plainly intended that interpretation of these controversial provisions should be submitted for the decision of railroad men, both workers and management, serving on the Adjustment Board with their long experience and accepted expertise

in this field." *Gunther* v. *San Diego & A. E. R. Co.,* 382 U. S. 257, 261–262. The Court there stated: "This Court time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board." *Id.,* at 263.

We need not even go back to last Term for such an expression of confidence in the workings of the Railroad Adjustment Board as the central organ of Railway Labor Act contract interpretation. In today's decision in *Transportation-Communication Employees Union* v. *Union Pacific R. Co., ante,* p. 157, the Court holds that the jurisdiction of the Board extends to settlement of tripartite work-assignment disputes. "The railroad, the employees, and the public, for all of whose benefits the Railway Labor Act was written," the Court says, "are entitled to have a fair, expeditious hearing to settle disputes of this nature." *Ante,* at 162. To meet arguments that the Board is not capable of dealing with such complex problems, the Court rightly notes that the Board can ". . . with its experience and common sense, handle this entire dispute in a satisfactory manner in a single proceeding." *Ante,* at 165.

I can see no reason why the Board, for purposes of the simple run-of-the-mill contract dispute raised in the present case, is suddenly deemed so incapable of adequately handling the question that the familiar labor law doctrine of exhaustion of remedies is ignored in this instance.

I would affirm the judgment of the Court of Appeals.