**LAURA V. and Edward V., on their behalf and as next friend and parents of Edward V., Jr.**

v.

**PROVIDENCE SCHOOL BOARD; Joseph Almagno, in his capacity as Superintendent of Schools for the City of Providence; Richard Curran, in his capacity as Assistant Superintendent for Curriculum and Staff Development for the City of Providence; Edward W. Collins, M.D., in his capacity as Director of the Department for Children and their Families; and Emma F. Pendleton Bradley Hospital.**

Civ. A. No. 87–0440 L.

United States District Court,
D. Rhode Island,

Feb. 26, 1988.

Martha McVicker, and Dianne Curran, Providence, R.I., for RIPAS.

Patricia A. Hurst, Providence, R.I., for Providence School Bd.

Robert D. Kilmarx, Providence, R.I., for Emma Pendleton Bradley.

Thomas M. Bohan, Providence, R.I., for Edward Collins, M.D.

### MEMORANDUM AND ORDER

LAGUEUX, District Judge.

The motion to dismiss in this case raises two issues: (1) whether plaintiffs are required to exhaust their administrative remedies prior to filing suit in this Court pursuant to 20 U.S.C. § 1415(e)(2) and 42 U.S.C. § 1983 and (2) if exhaustion is required, whether plaintiffs come within any exceptions to the exhaustion doctrine.

Plaintiffs, Laura and Edward V. are the parents of Edward V. Jr., (Eddie), a child born with Holt–Oram Syndrome in September of 1975. Holt–Oram Syndrome is a disease which manifests itself in multiple physical disabilities including deformed limbs and heart and respiratory problems.

Defendants consist of a number of parties. Defendant Providence School Board (PSB) is the entity charged by state law with the responsibility for the administration and management of the Providence public schools. In this capacity, the PSB is a recipient of federal financial assistance as a local education agency pursuant to the Education for All Handicapped Children Act (EAHCA), 20 U.S.C. § 1400 *et seq.*

Defendants Joseph Almagno and Richard Curran are the Superintendent and the Assistant Superintendent for Curriculum and Staff Development, respectively, for the City of Providence's public school system. In these capacities defendants Almagno and Curran have the responsibility for managing the day-to-day functions of the Providence public school system's special education programs.

Edward W. Collins, M.D. is the Director of the Rhode Island Department for Children and Their Families (DCF). In this capacity, Collins has overall responsibility for administering the Mental Health Services for Children and Youth Program (the MHSCY program), R.I.Gen.Laws § 40.1–7–1 *et seq.* This is a state program designed to provide mental health services for emotionally disturbed children.

Finally, defendant Emma Pendleton Bradley Hospital (Bradley Hospital) is a private non-profit facility for behaviorally disordered children. In addition to its medical facilities, Bradley Hospital operates a school program for mentally handicapped children.

In 1976, Eddie suffered an interruption in his oxygen supply after heart surgery which resulted in neurological impairment. As a result of this incident, Eddie suffers from learning disabilities and behavioral and emotional problems.

On August 27, 1984, Eddie was enrolled in Bradley Hospital's special education facility where he was to receive both medical and educational services. At about the same time, plaintiffs allege that Bradley Hospital requested the DCF to consider Eddie eligible for services under the MHSCY program. If a child is found eligible for the program, his parents are required to contribute to the cost of the medical services provided through the use of any insurance they might have. In this case, Eddie through his parents was the beneficiary of a $50,000 lifetime major medical coverage for "mental infirmity or functional nervous disorder" under a policy issued by the Amica Insurance Company (Amica).

Plaintiffs claim that Eddie was considered eligible for the MHSCY program by DCF in August of 1984. Furthermore, they allege that with such eligibility, R.I. Gen.Laws § 40.1–7–8 was triggered so that they were required to contribute Eddie's insurance benefits towards the cost of the program. Plaintiffs, however, claim that they were never notified by anyone that Eddie's benefits were being used for this purpose until September 1, 1986. At this time, plaintiffs allege that they were informed by Amica that the $50,000 in benefits had been exhausted. In essence, plaintiffs contend that they should have been given an opportunity to dispute whether a part or all of the $50,000 in benefits was properly paid by Amica to Bradley Hospital towards the MHSCY program as a medical expense, or whether part or all of this money should have been paid by the PSB as an educational expense.

On August 27, 1987, plaintiffs filed a complaint in this Court alleging that defendants deprived them of property without due process of law, the equal protection of the laws and the right to a free public education. In their complaint, plaintiffs pleaded two statutes as sources of redress for violation of these asserted rights: 20 U.S.C. § 1415(e)(2) and 42 U.S.C. § 1983.

In September of 1987, all defendants answered plaintiffs' complaint. Promptly thereafter, defendants PSB, Almagno and Curran moved to dismiss the complaint on the ground that this case is not properly before the Court since plaintiffs have failed to exhaust their administrative remedies. The matter was heard on December 3, 1987 and is now in order for decision.

■ The question of whether plaintiffs are required to exhaust their administrative remedies prior to filing a suit under 20 U.S.C. § 1415(e)(2) in federal district court has been answered by the First Circuit Court of Appeals in *Ezratty v. Puerto Rico*, 648 F.2d 770 (1st Cir.1981). There, the Court held that as a general rule the doctrine of exhaustion is applicable to all actions filed under 20 U.S.C. § 1415(e)(2). "Congress specifically mandated such review in 20 U.S.C. [§ 1415(a)(b)(c).]" *Ezratty*, 648 F.2d at 175. Briefly, those sections provide that any local educational agency which receives federal funding must establish and maintain certain procedures for the benefit of handicapped children and their parents or guardians. 20 U.S.C. § 1415(a). Parents or guardians have to be given the "opportunity to present complaints with respect to any matter relating to * * * the provision of a free appropriate public education" to the child involved. 20 U.S.C. § 1415(b)(1)(E). Under this statute, plaintiffs could have filed a claim with the PSB alleging that their medical benefits coverage was improperly utilized to pay for what were really educational expenses for their child, which expenses should have been the responsibility of PSB. If that issue was not resolved to their satisfaction, then they could have appealed to the State educational agency for an impartial review. 20 U.S.C. § 1415(c). In short, it is evident that plaintiffs have clearly defined administrative procedures available to them for determination of the issue presented here.

Consequently, this case should be dismissed and plaintiffs relegated to seeking administrative relief unless they come with-

in an exception to the exhaustion doctrine. The First Circuit has held that one is not required to seek administrative remedies where to do so would be "futile." *Ezratty,* 648 F.2d at 774. Futility generally is evident when the local or state agency simply refuses to process a plaintiff's claims. *Walker v. Southern R.R. Co.,* 385 U.S. 196, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966), *reh'g denied,* 385 U.S. 1020, 87 S.Ct. 699, 17 L.Ed.2d 559 (1967); *Hurry v. Jones,* 560 F.Supp. 500 (D.R.I.1983), *rev'd on other grounds,* 734 F.2d 879 (1st Cir.1984).

For example, in *Hurry* plaintiffs sought damages against the Superintendent of the Providence school system and others because the Providence School Department did not provide assistance and transportation for their physically handicapped male child. *Hurry,* 560 F.Supp. at 502–504. Prior to instituting their action, plaintiffs had requested the school department to build a wheelchair ramp so that they could transport their son from the entrance of his home onto a daily school bus. *Id.* at 502–503. To further complicate matters, the school department eventually ceased transporting plaintiff's son to school because of the ramp problem. *Id.* at 503. Despite numerous conversations, conferences and correspondences between plaintiffs and the Providence School Department, the assistance and transportation problems were not resolved. *Id.* at 503. Given the School Department's "intransigent" refusal to resolve plaintiff's claims, the Court in *Hurry* (Boyle, C.J.) held "no further attempt by plaintiffs to exhaust their administrative remedies was necessary." *Id.* at 505. In the words of Judge Breyer of the First Circuit, "it was the *agency* not the plaintiffs that prevented administrative remedies from being exhausted." *Ezratty,* 648 F.2d at 775 (emphasis in the original).

The facts of the present case are in stark contrast to those of *Hurry.* All that is alleged is that plaintiffs learned in September of 1986 that their insurance coverage for "mental infirmity or functional disorder" had been applied towards Eddie's "special education and related services." At no time, thereafter, did plaintiffs ever request a due process hearing from the

PSB or file a complaint with the Rhode Island Department of Education. From all that appears plaintiffs simply initiated an action for declaratory and injunctive relief in this Court one year after they learned of the status of their insurance coverage.

Unlike the plaintiffs in *Hurry,* plaintiffs here simply failed to give the appropriate administrative bodies a chance to resolve their claims. It was *plaintiffs,* not the agency, that prevented administrative remedies from being exhausted. Plaintiffs, therefore, have not shown that it would have been "futile" for them to exhaust their administrative remedies.

Plaintiffs, however, insist that it would have been "futile" for them to exhaust their administrative remedies because defendants failed to give them "notice of their rights with respect to use of the insurance proceeds to pay for Eddie's special education and related services." Plaintiffs base this argument on a case decided by the Ninth Circuit Court of Appeals called *Doe v. Maher,* 793 F.2d 1470 (9th Cir.1986).

*Doe* involved the misbehavior of two emotionally handicapped school children, John Doe and Jack Smith. Initially, these children were suspended by the Student Placement Committee (SPC) for their misbehavior with the recommendation of expulsion from the San Francisco Unified School District (SFUSD). *Id.* at 793 F.2d at 1476–1477. Their suspension was then continued indefinitely pending resolution of the expulsion proceedings. This was done in reliance on former California Education Code § 48903(h) which allowed an extension of suspension beyond five days pending the resolution of expulsion proceedings. *Id.* at 1477.

In the case of Doe, counsel objected to these procedures on the ground that they violated the EAHCA. He then asked the SFUSD to cancel the expulsion hearing and convene an individualized educational program team. The SFUSD ignored plaintiffs' request and Doe sought relief in federal district court. *Id.*

In the case of Smith, the SPC canceled the scheduled expulsion hearing and of-

fered to restore plaintiff to a half-day program or to provide him with home tutoring. The SPC, however, refused to allow plaintiff to return to a full-day program. *Id.* at 1477–1478. Approximately one month later, Smith's counsel became aware of Doe's suit pending in district court. He petitioned the court for leave to intervene; his petition was granted one month later. *Id.* at 1478.

On these facts the Ninth Circuit held that it would have been "futile" for Smith to exhaust his administrative remedies. The Court reasoned as follows:

> Although the SFUSD now concedes that the reduction in Smith's schedule was a "change in program" subject to the procedural safeguards (including administrative review) detailed in 20 U.S.C. § 1415 (1982), school officials did not initially so characterize it. The SFUSD completely failed to perform its statutory duty to notify Smith's grandparents of the change in a manner that would fully inform them of all available safeguards and avenues of review.

*Id.* at 1490–1491.

The facts of *Doe*, like those of *Hurry*, are distinguishable from the present case. Initially, the SFUSD simply refused plaintiffs' request to engage in the state administrative processes in accord with the EAHCA. Instead, they relied on a provision of the former California Code which allowed indefinite suspension pending an expulsion hearing. Once again, it was the *agency* not the plaintiffs that prevented administrative remedies from being exhausted. *Doe*, then, does not support the contention that it would have been "futile" for plaintiffs to exhaust their administrative remedies here.

Plaintiffs last contention is that they were not required to exhaust their administrative remedies because these remedies were "inadequate" to accord them the relief that they have requested. Plaintiffs posit that a hearing officer appointed by the Commissioner of Education to hear the case at the state level would not have had any authority to order injunctive relief against defendants Collins and Bradley Hospital.

This argument misconceives the true nature of plaintiffs' claimed injury. The PSB concedes that it must bear the cost of Eddie's "special education and related services" under the EAHCA. In order to be made whole for any injury they may have suffered, all plaintiffs need obtain is a ruling that some or all of the insurance benefits payable for "mental infirmity or functional disorder" were in fact paid towards the cost of Eddie's "special education and related services." The PSB could then be required to reimburse Amica for the amount of money incorrectly paid out under plaintiffs' policy. The Rhode Island Department of Education ultimately and the PSB initially have the authority to decide whether plaintiffs are entitled to this relief.

Under Rhode Island law there is a well established system designed to resolve disputes relating to educational matters. At the local level, a claimant may be able to obtain relief by filing a claim for a hearing before the local school committee. If the school committee renders a decision adverse to the claimant, the claimant may appeal that decision to the State Commissioner of Education. R.I.Gen.Laws § 16–39–2 (1981). In practice, this takes the form of a hearing before a hearing official appointed by the Commissioner. If the dispute is not resolved at this level, appeal may be had to the Commissioner himself. R.I.Gen.Laws § 16–39–1 provides that any decision of the Commissioner of Education is then subject to review by the State Board of Regents for Elementary and Secondary Education. Once this administrative process is completed, plaintiffs may obtain judicial review in the Rhode Island Superior Court as provided by Chapter 35 of title 42 (the State Administrative Procedures Act). R.I.Gen.Laws § 16–39–4.

At any step along the way, a decision might be rendered vindicating plaintiffs' alleged monetary and coverage loss with a requirement that PSB reimburse plaintiffs' insurance carrier for the amount the carrier incorrectly paid to Bradley Hospital.

Plaintiffs cannot complain that these administrative remedies are inadequate so as to relieve them of their duty to exhaust.

■ Plaintiffs' claims arising under 42 U.S.C. § 1983 implicate a slightly different analysis but result in a similar fate. As a general rule, the United States Supreme Court has held that a plaintiff need not exhaust his state judicial or administrative remedies prior to launching a § 1983 action in federal court. *Patsy v. Board of Regents,* 457 U.S. 496, 516, 102 S.Ct. 2557, 2568, 73 L.Ed.2d 172 (1982). "State administrative [and judicial] remedies, [however], must be exhausted when a federal statute so provides." *Mrs. W. v. Tirozzi,* 832 F.2d 748, 758 (2d Cir.1987).

While § 1983 does not contain an exhaustion requirement, the EAHCA does. Section 1415(f) of that statute provides as follows:

(f) Effect on other laws

Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, title V of the Rehabilitation Act of 1973 [29 U.S.C.A. § 790 et seq.], or other Federal statutes protecting the rights of handicapped children and youth, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (b)(2) and (c) of this section shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

What this all means is that prior to instituting a civil action "under such laws" as provide relief which is also available under § 1415 (e.g. § 1983), a plaintiff must exhaust his administrative remedies "to the same extent" as would have been required "had the action been brought" under § 1415. As one court has recently explained.

The Act's exhaustion requirements are the same for 42 U.S.C. § 1983 ... and were not eliminated or cut-back by the Handicapped Children Protection Act of 1986. Thus, pre–1986 judicial construc-

tion of the [EAHCA]'s exhaustion requirements still remain viable.

*Mrs. W. v. Tirozzi,* 832 F.2d 748, 756 (2d Cir.1987); *See also* S.Rep. No. 112, 99th Cong., 2d Sess. 14, *reprinted in* 1986 U.S. Code Cong. & Admin.News 1798, 1805; H.R.Conf.Rep. No. 687, 99th Cong., 2d Sess. 7, *reprinted in* 1986 U.S.Code Cong. & Admin.News 1809.

This Court, however, has already applied "pre–1986 judicial construction" of the EAHCA's exhaustion requirements to the facts of this case. The reasoning and conclusions reached in that analysis are equally applicable to plaintiff's 42 U.S.C. § 1983 claims. Plaintiffs, therefore, are precluded from bringing their claims under § 1983 here because they have failed to exhaust their administrative remedies.

For all the above reasons, the motion of defendants PSB, Almagno and Curran to dismiss plaintiffs' claims under 20 U.S.C. § 1415(e)(2) and 42 U.S.C. § 1983 is granted.

*It is so Ordered.*