Richard T. FELL and Mercedes
G. Fell, Plaintiffs,

v.

CONTINENTAL AIRLINES, INC., a
Delaware Corporation, Defendant
and Third–Party Plaintiff,

v.

INDEPENDENT ASSOCIATION
OF CONTINENTAL PILOTS,
Third–Party Defendant.

Civil Action No. 97–B–861.

United States District Court,
D. Colorado.

Jan. 20, 1998.

Richard L. Harring, Philip M. Quatrochi, Grimshaw & Harring, P.C., Denver, CO, for plaintiffs.

Roland P. Wilder, Jr., Christy Concannon, Baptiste & Wilder, Washington, DC, for defendant.

Daniel R. Satriana, Jr., Marianne E. Pierce, Hall & Evans, L.L.C., Denver, CO, Dennis E. Valentine, Walter C. Bauer, III, Brauer, Buescher, Valentine, etc., Denver, CO, for Third–Party defendant.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Defendant Continental Airlines, Inc. (CAL) moves to dismiss the claims of plaintiffs Richard T. Fell (Fell) and Mercedes G. Fell for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). On January 12, 1998, pursuant to a stipulation by the parties, I dismissed all claims of Mercedes Fell. Thus, Fell's only pending claims are Colorado state claims for unfair labor practices pursuant to sections 8–3–108 and 121, C.R.S. (claim one), breach of contract (claim two), and intentional infliction of emotional distress (claim three).

During this action, CAL filed a third-party complaint against third-party defendant Independent Association of Continental Pilots (IACP or the Union) for breach of contract. IACP moves to dismiss CAL's complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. After consideration of the motions, briefs, and arguments of counsel, I will grant CAL's motion to dismiss Fell's complaint and deny the Union's motion to dismiss CAL's third-party complaint.

### I.

The following facts are undisputed. Fell was hired by CAL in December 1966, and is currently a pilot with CAL. On August 31, 1995, CAL and the Union entered into a collective bargaining agreement (CBA) which included a provision requiring each pilot covered by the CBA to pay the Union a monthly service charge (agency fee) for administration of the CBA and the representation of the pilot. Fell, who is not a member of the Union, acknowledges that he is covered by the CBA but refused to pay any amount of the agency fees which was "in excess of the Union's expenditures for activity that was

germane to collective bargaining." C/O ¶ 6. On April 4, 1996, the Union requested, pursuant to CBA § 17, CAL to terminate Fell for failure to remit his agency fees. On May 14, 1996, Fred Abbott (Abbott), senior director of CAL flight operations notified Fell by letter that unless Fell appealed within 10 days, his employment with CAL would be terminated on June 14, 1996, for failure to pay agency fees to the Union. On May 20, 1996, Fell wrote to Abbott informing him that he (Fell) was appealing and advised Abbott of his objection "to the use of the [agency fees] for 'purposes not germane to administering the CBA.'" C/O ¶ 9; Fell Resp.Brief, Ex. 2. The Union advised Fell on May 24, 1996, that it would not account for any non-germane expenses. C/O ¶ 10. On June 18, 1996, when Fell attempted to sign-in for his next flight, he learned from the CAL computer that he had been terminated. Fell was advised officially by certified letter postmarked June 20, 1996, that he was terminated effective June 18, 1996. The letter also informed Fell that he had the right for thirty (30) days, to appeal the termination decision to Joe Fox (Fox), staff vice-president, Union Labor relations. *Id.* at ¶ 12. On July 8, 1996, Fell, through his counsel, notified Fox of his appeal. Fox advised Fell's counsel on September 3, 1996, that CAL "w[ould] bring him back." *Id.* at ¶ 15. On September 15, 1996, Fell was assigned to fly a route for one day. On October 1, 1996, Fell began regular flight duty. *Id.* at ¶ 17.

The Fells filed case no. 97–CV–1687 on March 26, 1997, in the District Court, City and County of Denver, Colorado. CAL then removed the case to this court based on diversity jurisdiction. The Notice of Removal stated the amount in controversy is in excess of $50,000, rather than $75,000, the diversity amount effective January 17, 1997. Notice of Removal, ¶ 6. During oral argument, the parties stated that if CAL's motion is granted but the IACP's denied, it was speculative whether the amount in controversy between CAL and the IACP would reach the jurisdictional amount.

After removal, CAL filed a third-party complaint against the Union in which it alleges that the Union breached CBA § 17(6). During this lawsuit, CAL counsel sent a letter to the Union's counsel stating that pursuant to the CBA, CAL "was tendering its defense of the federal lawsuit to the [Union]." Third-party C/O ¶ 9. On April 2, 1997, counsel for the Union telephoned CAL's counsel and stated that the Union was not obligated to indemnify and defend CAL in the Fell's federal diversity lawsuit. *Id.* at ¶ 11. The next day, CAL's counsel sent a letter to the Union's counsel asking the Union to reconsider its position. The Union did not respond to the letter. *Id.* at ¶¶ 11–12.

## II.

In response to a Rule 12(b)(1) motion, the district court has wide discretion to consider affidavits, documents, and even hold a limited evidentiary hearing. *See Wheeler v. Hurdman,* 825 F.2d 257, 259 n. 5 (10th Cir.1987). Here, Fell and CAL have submitted exhibits which I will consider in ruling on these motions. The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir.1974).

## III.

### A. *CAL's Fed.R.Civ.P. 12(b)(1) motion to dismiss Fell's claims*

CAL moves to dismiss Fell's complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction. In its motion to dismiss, CAL asserts that Fell's claims are preempted by the Railway Labor Act, 45 U.S.C. § 151 *et seq.*

#### 1. *Railway Labor Act, 45 U.S.C. § 151, et seq.*

Congress enacted the Railway Labor Act (RLA), 45 U.S.C. § 151, *et seq.* to provide effective mechanisms for resolving labor disputes between railroads and their employees. *See e.g., Elgin, J & E Railway v. Burley,* 325 U.S. 711, 722–28, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945). The RLA was extended to apply to air carriers and their employees in 1936. RLA §§ 181–188. Pursuant to the RLA, air carriers are required to establish boards of adjustment to consider and resolve disputes between the carriers and their employees. 45 U.S.C. § 184.

1268

In their CBA, CAL and the Union agreed upon a System Board of Adjustment (SBA or Board) to resolve employment related disputes with CAL's pilots. CBA, § 20, pp. 20–1–7. The SBA has exclusive jurisdiction to hear and decide claims that are considered "minor" disputes under the RLA. If a dispute is determined to be "minor," the RLA arbitration provisions are mandatory and preempt state court remedies. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 322–23, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972). Moreover, "provision for arbitration of a discharge grievance, a minor dispute, is not a matter of voluntary agreement under the [RLA]; the Act compels the parties to arbitrate minor disputes before the [Board]...." *Walker v. Southern Ry. Co.*, 385 U.S. 196, 198, 87 S.Ct. 365, 17 L.Ed.2d 294 (1966).

A "minor" dispute is defined as "involving the interpretation or application of an existing labor agreement." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994). In contrast, a "major" dispute "is one [where] a party is trying to establish rights not even arguably contained in an agreement." *Zimmerman v. Atchison, Topeka & Santa Fe Ry. Co.*, 888 F.2d 660 (10th Cir.1989). "The distinguishing feature of [a 'minor' dispute] is that the dispute may be conclusively resolved by interpreting the existing [collective bargaining] agreement." *Consolidated Rail Corp. v. Railway Labor Executives' Ass'n*, 491 U.S. 299, 305, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (ConRail); *Davies v. American Airlines, Inc.*, 971 F.2d 463, 467 (10th Cir.1992) ("minor" disputes limited to those that require CBA interpretation). Under the RLA, the threshold question here is whether resolution of plaintiff's state law claims requires the interpretation or application of the CBA. *Fry v. Airline Pilots Ass'n, Int'l*, 88 F.3d 831, 836 (10th Cir.1996).

CAL argues that the dispute in this case is "minor." Fell does not dispute this. Indeed, Fell states that the "[CBA] is a valid employment contract that governs the terms and conditions of [his] employment with [CAL]." C/O ¶ 28. However, plaintiffs often attempt "to avoid federal jurisdiction under [the RLA] by framing their complaints in terms of such diverse state law theories as wrongful discharge, intentional infliction of emotional distress, conspiracy, and misrepresentation." *United Ass'n of Journeymen and Apprentices of the Plumbing and Pipe Fitting Indus. of the U.S. and Canada, Local No. 57 v. Bechtel Power Corp.*, 834 F.2d 884, 887–88 (10th Cir.1987), *cert. denied*, 486 U.S. 1055, 108 S.Ct. 2822, 100 L.Ed.2d 923 (1988). The Tenth Circuit rejects that practice, stating that "federal courts look beyond the allegations of the complaint ... to determine whether the wrong complained of actually arises in some manner from a breach of the defendants' obligations under a collective bargaining agreement." *Id.* at 888. *See also Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 219–20, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) (because labor arbitration needs to be protected and encouraged, courts should be wary of allowing employees to attempt to bypass arbitration by recasting disputes with employers as state law claims). This warning is equally applicable to all three of Fell's state law claims. Here, as in *Fry*, the alleged intentional infliction of emotional distress is "inextricably bound up" with the agreements and promises made by CAL and then allegedly breached. As in *Fry*, only by comparing the protective system promised by [CAL] with its behavior, could a fact finder determine whether CAL breached its contract with Fell and whether CAL's behavior was outrageous or willful and wanton. *Id.* at 837. The same rationale applies to Fell's claim under the Colorado Unfair Labor Practices Act.

I conclude that the claims in this case are "minor" and, thus, preempted by the RLA. Pursuant to the RLA, I have no subject matter jurisdiction over Fell's claims. Accordingly, I will grant CAL's motion to dismiss Fell's complaint.

### 2. CBA § 17 versus CBA § 20

Fell makes, in essence, an equitable argument that he has no recourse under the CBA to recover his claimed damages including failure to be reinstated on CAL's seniority list, C/O ¶ 17, loss of "pay cap" totalling $5,422.35, *id.* at ¶ 18, twenty-five (25) "bank" hours, *id.* at ¶ 19, and loss of his ability to contribute to his 401k from June, 1996, until

February 26, 1997. *Id.* at. ¶ 21. According to Fell, CBA § 17 is the exclusive method by which he may challenge a § 17 discharge. I disagree.

Section 17 provides, in pertinent part:

**A. Dues Check–Off**

1. During the life of this Agreement, the Company shall deduct on a monthly basis from the pay of each pilot and remit to the [IACP] along with an accounting thereof, an amount equal to the IACP's regular and usual monthly dues or service charges, and assessments, provided such pilot voluntarily executes the Dues Check–Off form as attached hereto. All check-off forms will be submitted through the Secretary–Treasurer of the IACP, who will forward the original signed copy to the Company, Human Resources Department. . . .

2. A pilot who has executed a check-off form, and who resigns, is otherwise terminated from the employ of the Company, . . . or enters a non-pay status, shall be deemed to have suspended his dues check-off assignment and authorization. . . . For a pilot who resigns or is otherwise terminated, and is subsequently reemployed, no deductions of IACP dues will occur until such time as the pilots (sic) executes a new check-off form in compliance with this section.

**B. Agency Shop**

1. ·Each pilot covered by this Agreement who fails to voluntarily acquire or maintain membership in the IACP will be required, as a condition of employment, beginning sixty (60) days after the effective date of this Agreement . . ., to pay the IACP a monthly service charge as a contribution for the administration of this Agreement and the representation of the pilot. The service charge shall be in an amount equal to the IACP's regular and usual monthly dues and assessments (not including fines and penalties).

2. If any pilot covered by this Agreement becomes delinquent in the required payment of the service charge . . ., the IACP may immediately notify such pilot by CERTIFIED MAIL, RETURN RECEIPT REQUESTED, with a copy sent by regular U.S. mail and a copy to the System Chief Pilot, that the pilot is delinquent in the payment of such service charge or membership dues as specified herein and is subject to discharge as a pilot for the Company. Such letter shall also notify the pilot that the required payment must be remitted within a period of thirty (30) days or the pilot will be discharged.

3. If upon the expiration of the thirty (30) day period, the pilot remains delinquent, the IACP may certify in writing to the System Chief Pilot, copy to the pilot, that the pilot has failed to remit payment within the grace period allowed and is to be discharged. The System Chief Pilot shall thereafter notify the pilot that he is to be discharged from the service of the Company, of the reasons for this action, and of his rights under this section to appeal this decision.

4. A pilot who is to be discharged as the result of the provisions of this Section shall be entitled to challenge the validity of such action only by using the following procedure:

   a. The pilot must in writing submit his request for review within ten (10) days from the date of notification by the System Chief Pilot as provided in Paragraph 3 above. The request must be submitted to the System Chief Pilot. The System Chief Pilot or his designee will review the grievance and render a decision in writing within a reasonable time following receipt of the grievance, with a copy to the IACP.

   b. The decision of the System Chief Pilot or his designee shall be final and binding on all interested parties unless appealed by either the pilot or the IACP within thirty (30) days from the date it was sent. The appeal shall be submitted in writing to the Director of Human Resources who shall with assistance from the pilot and a representative of the IACP, using a random method, select a neutral referee from the parties' standing panel of arbitrators to hear the dispute. The decision of the neutral referee shall be final and binding on all parties to the dis-

pute. The fees of the neutral referee and all other costs of the proceeding shall be borne by the IACP.

5. During the period a grievance is being handled under the provisions of this section, and until the decision of the System Chief Pilot (or his designee) or the neutral referee becomes final, the pilot shall not be discharged from the Company nor lose any seniority rights because of noncompliance with the terms and provisions of this section. A decision shall be deemed final when the time for appeal has expired, if no appeal has been lodged.

6. It is expressly agreed that the Company shall not be liable for any claim of loss by any pilot adversely affected by any Company action taken pursuant to a written request by the IACP related to the terms of this Section. It is further expressly agreed that the IACP shall defend the Company in any legal proceedings related to such action, and the IACP will indemnify and hold the Company harmless from all costs relating to such legal proceedings, or from any final adverse judgement which results from them.

7. In order to provide adequate time for the Company to hire a suitable replacement, in no event will the terms of this Section be construed to require the company to terminate or take out of service any pilot prior to ninety (90) days after the IACP's notification to do so.

. . . .

D. During the life of this Agreement the Company agrees to deduct from the pay of each employee covered by this Agreement and remit to the IACP, membership dues and agency fees uniformly required by the IACP, provided the employee voluntarily executes the following agreed upon form. This form shall be prepared and furnished by the IACP.

CBA, § 17 (underline emphasis added).

Fell complains that CAL violated the discharge procedures set out in § 17(B)(5). According to Fell, because he appealed the System Chief Pilot's termination decision to Fox within thirty days from June 18, 1996, CAL violated § 17(B)(5) by discharging him

before a neutral referee could hear the dispute. Fell then argues that § 17 provides his only recourse against CAL's actions.

Section 17(B)(4) states that "a pilot who is to be discharged as the result of the provisions of this Section shall be entitled *to challenge the validity of such action* only by using the following procedure." § 17(B)(4) (emphasis added). In his complaint and response to CAL's motion to dismiss, Fell does not challenge the *validity* of his discharge pursuant to § 17. Rather, his complaint is based on CAL's violation of the *procedures* by which his discharge was accomplished. In arguing that he is limited to § 17 to seek relief from CAL's actions, Fell fails to discern the distinction between challenging the validity of his discharged and objecting to the procedure by which it was accomplished.

The CBA, § 20 titled "Resolution of Disputes" provides that:

[a]ny pilot covered by the current [CBA], who has a grievance concerning the application of the CBA, or who believes he or she have been unjustly disciplined or discharged, which dispute has not been settled in conference with Company officials, shall use the dispute resolution procedures established herein.

CBA, § 20, Part 1(A).

After his discharge on June 18, 1996, Fell notified the Director of Human Resources, by a July 8, 1996, letter that he was appealing the Chief System Pilot's decision. Fell and CAL began the process of selecting a neutral arbitrator to resolve the dispute as required by § 17(B)(4)(b). On September 4, 1996, while the parties were in the process of selecting a neutral arbitrator, CAL notified Fell that he would be returned to active service "pending the outcome of [his] arbitration hearing." Fell Resp., Ex. 6. Fell resumed regular flights on October 1, 1996.

CAL's discharge of Fell before a neutral referee rendered a decision might be viewed as an "unjust" discharge pursuant to § 20, Part I(A). However, Fell states that his reinstatement "effectively resolv[ed] the wrongful termination portion of the dispute." Thus, Fell's complaint centers on his allegations that CAL violated § 17(5)(B)'s terms by

discharging him before the discharge decision was final. Under these circumstances, I view this claim to concern the "application of the CBA" as contemplated by § 20, Part 1(A).

### 3. *Application of § 20 Dispute Resolution*

Fell argues that he should not be required to submit to CBA § 20 requirements because CAL failed to follow the CBA § 20 requirements. He also argues that CAL's decision to reinstate him "effectively repudiat[ed] the § 20 contractual remedies, excusing [him] from being required to exhaust these remedies." Fell Resp. p. 6. I disagree. As I stated in section I(A)(1), *supra*, Fell's state law claims are preempted by the RLA. He must, therefore, submit to the procedures contained in the CBA.

Fell also argues that § 20 permits only the Union to appeal to the SBA and that he may not unilaterally appeal to the SBA. Section 20, Part 3(B) provides:

> 1. The System Board shall have authority to hear *only matters which are properly appealed to it by the IACP*, are within the scope of this Agreement, and which have been handled through the prior steps of this grievance procedure. By mutual agreement, however, the parties may agree to waive any or all prior steps and proceed directly to the System Board.
> 2. The System Board shall have the authority to issue rulings and make awards necessary to compensate a pilot for actual damages suffered a result of any contract violations it finds to have occurred. Such authority shall extend to awards ordering reinstatement, restoration of back pay, benefits and seniority, or other actual damages flowing directly from the violation(s)....

CBA, § 20, Part 3(B) (emphasis added).

Fell argues that there exists a conflict of interest between his and the Union's interests. First, he points to CBA, § 17(6), which requires the Union to defend, indemnify and hold CAL harmless from all costs relating to his claim, including any adverse judgment. Also, he argues that "it would be impossible for the Union to fairly and impartially exercise any authority within the § 20 process [as either his] representative or in the capacity of the party determining whether or not to appeal Fell's grievance to the Board because of the inherent conflict between [his] and the Union's interests." Fell Resp. p. 8. However, Fell brings no claim against the Union. Thus, these arguments miss the mark. If the Union were to breach its duty to Fell under the CBA, he may have a separate claim against the Union for such breach. In this action, however, Fell did not sue the Union.

### B. *Third-party defendant IACP's Fed.R.Civ.P. 12(b)(1) motion to dismiss*

Fell filed suit in the District Court for the City and County of Denver, State of Colorado. CAL removed the case to federal court on April 25, 1997. Removal was based on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and pursuant to 28 U.S.C. §§ 1331 and 1441(a) and (b) in contemplation of CAL's RLA preemption argument against Fell's complaint.

On June 6, 1997, CAL filed a third-party complaint against the Union seeking indemnification from them for its defense in the main action. Supplemental jurisdiction was asserted pursuant to 28 U.S.C. § 1367(a). The Union moves to dismiss, pursuant to Fed.R.Civ.P. 12(b)(1), CAL's third-party complaint claiming breach of indemnity agreement. I will deny the motion to dismiss.

### 1. *Facts*

CAL and the Union signed the CBA on August 31, 1995. CBA § 17(6) provides:

> It is expressly agreed that [CAL] shall not be liable for any claim of loss by any pilot adversely affected by any [CAL] action taken pursuant to a written request by the [Union] related to the terms of this Section. It is further expressly agreed that the [Union] shall defend [CAL] in any legal proceedings related to such action, and the [Union] will indemnify and hold [CAL] harmless from all costs relating to such legal proceedings, or from any final

adverse judgement which results from them.

CBA, § 17(6).

On March 28, 1997, CAL's counsel sent a letter to the Union's counsel, stating that pursuant to § 17(6) of the CBA, CAL was tendering its defense of Fell's lawsuit to the Union. On April 2, 1997, the Union's counsel telephoned CAL's counsel and stated that the Union was not obligated to indemnify and defend CAL in this lawsuit. CAL's counsel sent the Union's counsel a letter on April 3, 1997, asking the Union to reconsider its position. The Union did not respond to the letter. CAL filed its third-party complaint against the Union on June 2, 1997, claiming that the Union breached the CBA.

█ The Union moves to dismiss CAL's breach of contract claim on the ground that the claim is a "minor" dispute subject to the SBA and preempted by the RLA. The Union's argument assumes that because the indemnity clause is in the CBA, the dispute between it and CAL is, *a fortiori*, subject to the RLA and the cases addressing it. I do not agree with the Union's assumption.

The mere fact that an indemnification clause between a union and a carrier is contained in a CBA does not automatically trigger the RLA and law pertinent to it. Rather, in this issue of first impression I must look to the RLA's provisions.

RLA section 151a sets out the general purposes of the RLA:

1. to avoid any interruption to commerce or to the operation of any carrier engaged therein;

2. to forbid any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization;

3. to provide for the complete independence of carriers and of employees in the matter of self-organization to carry out the purposes of this chapter;

4. to provide the prompt and orderly settlement of all disputes concerning rates of pay, rules or working conditions; and

5. to provide for the prompt and orderly settlement of all disputes growing out of grievances or out of the interpretation or application of agreements covering rates of pay, rules, or working conditions.

RLA § 151a(5). Section 151a does not reference, explicitly or implicitly, contractual rights or duties of indemnification between unions and carriers. Rather, the focus is on unimpeded commerce through orderly relations between carriers and their employees,

Section 152, titled "General Duties," sets out the duties of carriers and employees to settle disputes. Specifically § 152 First states:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes ... in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

The role of the union as a representative is discussed in § 152 Second as follows:

All disputes between a carrier ... and its ... employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier ... and by the employees thereof. ...

The RLA defines the term "representative" as "any person or persons, labor union, organization, or corporation designated either by a carrier ... or by its ... employees, to act for it or them." RLA § 151 Sixth.

The other provisions of § 152 speak to disputes between only two parties, the carrier and the employee(s). *See e.g.* RLA § 152 Third ("without interference, influence, or coercion by *either party* [and] *neither party* shall in any way interfere with ... the *other* in its choice of representative"); § 152 Sixth ("[it is] the duty of the designated representative(s) of the carrier and employees, within ten days after the receipt of notice of a desire on the part of *either* party to confer. ... ").

RLA § 181 extends to air carriers all provisions of the RLA, except section 153 which established the National Railroad Adjust-

ment Board. Section 182 sets out the "duties, requirements, penalties, benefits, and privileges" applicable to air carriers and their employees. RLA § 183 discusses disputes within the jurisdiction of the National Mediation Board (NMB) established in RLA § 154. Section 183 establishes the extent of jurisdiction of the NMB stating that *"either party* to a dispute between an employee ... and a carrier ... by air may invoke the services of the NMB." Again, the subject is labor relations between carriers and their employees, rather than collateral contractual dispute resolution between unions and carriers. Most significant, perhaps, is the language contained in § 184, establishing system boards of adjustments:

> The disputes between an employee or group of employees and a carrier ... by air growing out of grievances, or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions ... shall be handled in the usual manner ...; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by *either* party to an appropriate adjustment board....

> It shall be the duty of every carrier and of its employees, acting through their representatives ... to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system ... boards of adjustment, under the authority of section 153 of this title.

> Such boards of adjustment may be established by agreement between employees and carriers either on any individual carrier, or system or group of carriers by air and any class or classes of its or their employees.... Nothing in this chapter shall prevent said carriers by air, or any class or classes of their employees, *both acting through their representatives* ... from mutually agreeing to the establishment of a National Board of Adjustment of temporary duration and of similarly limited jurisdiction.

The RLA's consistent reference to carriers and their employees, the use of the term "either," and the failure to mention the unions except in a representative role, supports the conclusion that, in the context of this case, a union is not a "party" covered by the RLA. At most, it may act in a representative capacity for its members but not in its own capacity as a union entity. A survey of RLA cases buttresses this view. *See e.g. Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 114 S.Ct. 2239, 129 L.Ed.2d 203 (1994) (employee suit against carrier); *Consolidated Rail Corp. v. Railway Labor Executives' Association,* 491 U.S. 299, 109 S.Ct. 2477, 105 L.Ed.2d 250 (1989) (union, on behalf of employees, opposed carrier's unilateral plan to require drug screening in employee physicals); *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972) (employee suit against carrier); *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967) (union member suit against union for breach of duty of fair representation); *Transportation–Communication Employees Union v. Union Pacific R.R. Co.,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966) (union sued carrier to enforce National Railroad Adjustment Board order); *Arnold v. Air Midwest, Inc.,* 100 F.3d 857 (10th Cir.1996) (pilot sued union for breach of duty of fair representation); *Lancaster v. Air Line Pilots Ass'n, Int'l,* 76 F.3d 1509 (10th Cir.1996) (nonunion pilot sued union and carrier challenging agency shop assessment).

As I have stated, there is no RLA case dealing with a union in a role other than as a representative of an employee or group of employees. Thus, none of the cases cited by the parties is on point. However, underlying every RLA case is a "labor dispute." Indeed, "Congress' purpose in passing the RLA was to promote stability in labor-management relations by providing a comprehensive framework for resolving labor disputes." *Norris,* 512 U.S. at 252. Here, the third-party complaint presents no dispute between the employer and an employee or group of employees. Significantly, this dispute between CAL and the Union, acting on its own behalf, presents no threat of danger sought to be avoided by the RLA such as work disruptions, the threat of economic duress, strikes, or violence.

Further, the scope of the SBA to arbitrate claims brought pursuant to a CBA is limited

to "disputes between an employee ... and a carrier...." To hold the claim of breach of the contractual indemnity clause between CAL and the Union to be covered by the RLA would judicially legislate expansion of the scope of the RLA. Such a result would require a tortured reading of Supreme Court precedent.

I hold that the Union, acting in its own behalf, is not a party as contemplated by the RLA and the cases interpreting and applying it. The indemnity dispute between CAL and the Union is neither "major" nor "minor" within the meaning of the RLA. Thus, the RLA does not apply to CAL's Colorado state claim for breach of contract. Accordingly, I will deny the Union's motion to dismiss for lack of subject matter jurisdiction.

The question of jurisdiction over CAL's third-party complaint remains, however. Here, jurisdiction was asserted as supplemental pursuant to 28 U.S.C. § 1367(a). Having dismissed Fell's complaint and having determined that the third-party complaint presents a simple breach of contract claim under Colorado law, jurisdiction, if it exists, must rest on diversity pursuant to 28 U.S.C. § 1332(a)(1). Because it is speculative, at best, that the amount in controversy exceeds $75,000, I conclude that the appropriate disposition is to remand this action back to the District Court for the City and County of Denver, State of Colorado.

Accordingly, IT IS ORDERED that:

1. the motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) filed by defendant Continental Airlines, Inc. is GRANTED; and

2. the motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R.Civ.P. 12(b)(1) filed by third-party defendant Independent Association of Continental Pilots is DENIED;

3. the case is REMANDED to the District Court for the City and County of Denver, State of Colorado (Case No. 97–CV–1687); and

4. each party shall bear its own costs.